## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ROBERT DIGGINS                                     CIVIL ACTION

VERSUS                                             NO. 17-3416

DARREL VANNOY, WARDEN                              SECTION: "B"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Robert Diggins, is a convicted inmate currently housed at the Louisiana State Penitentiary in Angola, Louisiana.    In July 2008, he was charged with attempted second-degree murder.[1]    On May 11, 2010, a jury found him guilty as charged.[2]    The State subsequently filed a multiple bill of information.    On February 25, 2011, the trial court

---

[1]  State Rec., Vol. 1 of 7, Bill of Information.

[2]  State Rec., Vol. 1 of 7, Minute Entry, 5/11/10.

adjudicated him guilty as a fourth-felony offender.[3]    On May 18, 2011, he was sentenced to life imprisonment.[4]    His motion to reconsider the sentence was denied.

On direct appeal, he asserted the following counseled assignments of error:    (1) the trial court erred in denying the motion to suppress evidence obtained in a warrantless search of a vehicle; (2) the State suppressed exculpatory photographic evidence in violation of *Brady v. Maryland*; (3) he was denied a fair trial based on prejudicial comments by the court, infringement on his right to present a defense and biased rulings on hearsay; (4) the trial court erred in allowing improper comments by the prosecutor during closing argument; (5) the life sentence was excessive; and (6) he was denied the right to appellate review because he was not allowed leave to file a brief in excess of the page limitation.    In a pro se supplemental brief, Diggins offered additional argument on the hearsay and excessive sentence issues and also asserted two new claims:    (1) his life sentence was improper because the State failed to institute proceedings by grand jury indictment; and (2) ineffective assistance of counsel for provoking the trial court's prejudicial rulings, failing to file a motion for new trial, and failing to prepare for the multiple bill hearing.    On October 23, 2013, the Louisiana Fourth Circuit Court of Appeal affirmed the conviction and sentence.[5]    On May

---

[3]  State Rec., Vol. 1 of 7, Minute Entry, 2/25/11.

[4]  State Rec., Vol. 1 of 7, Minute Entry, 5/18/11.

[5]  *State v. Diggins*, 2012-KA-0015 (La. App. 4 Cir. 10/23/13), 126 So.3d 770; State Rec., Vol. 6 of 7.    The appellate court noted as error patent that the sentence must include a restriction on parole eligibility for the first 50 years of the sentence, and that such correction is self-activating under Louisiana Revised Statute 15:301.1(A).

23, 2014, the Louisiana Supreme Court denied his application for writ of certiorari without providing any additional written reasons.[6]

On or about July 20, 2015, Diggins submitted an application for post-conviction relief to the state district court.[7]    In that application, he asserted that trial counsel was ineffective for failing to object to an erroneous jury charge.    On August 26, 2015, the state district court denied his application for post-conviction relief.[8]    On October 19, 2015, the Louisiana Fourth Circuit Court of Appeal denied his related supervisory writ application.[9]    On April 7, 2017, the Louisiana Supreme Court denied relief stating simply "[Diggins] failed to show he received ineffective assistance of counsel under the standard of *Strickland v. Washington*."[10]

On or about April 12, 2017, Diggins filed his federal application for habeas corpus relief, in which he raises all but two of the claims for relief asserted in the state courts.[11]    His claims include:    (1) the trial court erred in denying the motion to suppress evidence

---

[6]  *State v. Diggins*, 2013-KO-2742 (La. 5/23/14), 140 So.3d 723; State Rec., Vol. 6 of 7.

[7]  State Rec., Vol. 7 of 7, Application for Post-Conviction Relief and Memorandum in Support.

[8]  State Rec., Vol. 7 of 7, Minute Entry, 8/26/15.

[9]  State Rec., Vol. 7 of 7, *State v. Diggins*, 2015-K-1082 (La. App. 4 Cir. Oct. 19, 2015).

[10]  *State ex rel. Diggins v. State*, 2015-KH-2126 (La. 4/7/17), 215 So.3d 220; State Rec., Vol. 7 of 7.

[11]  Rec. Doc. 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.    He does not reassert the claims related to the charging instrument barring imposition of a life sentence or the denial of appellate review due to briefing page-limitations.

obtained in a warrantless search of a vehicle; (2) the State suppressed exculpatory photographic evidence in violation of *Brady v. Maryland*; (3) he was denied a fair trial based on prejudicial comments by the court, infringement on his right to present a defense and biased rulings on hearsay; (4) the trial court erred in allowing improper comments by the prosecutor during closing argument; (5) the life sentence was excessive; and (6) ineffective assistance of counsel for provoking the trial court's prejudicial rulings, failing to file a motion for new trial, failing to object to the jury charge and failing to prepare adequately for the multiple bill hearing.    The State's response concedes that the federal application is timely and that the claims have been exhausted in the state courts.[12]    The State argues that the suppression-of-evidence claim should be rejected as procedurally defaulted and the remaining claims should be denied on the merits.[13]

### Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts adduced at trial as follows:

Defendant was convicted of the attempted second degree murder of Mr. Daniel

---

[12]   The State's response construes Diggins's additional argument made for the first time in his Louisiana Supreme Court application for certiorari (*i.e.*, that pursuant to *United States v. Cronic*, 466 U.S. 648, 659 (1984), his attorney entirely failed to subject the prosecution's case to meaningful adversarial testing such that prejudice should be presumed) as a separate, independent ineffective-assistance-of-counsel claim, and argues that it was not properly exhausted at all levels of review in the state courts.    Because the Court considers the allegation of presumptive prejudice as part and parcel of his ineffective-assistance claim that counsel was entirely unprepared to defend him at the multiple-offender hearing, which admittedly was exhausted on direct appeal, the Court finds it unnecessary to address the State's exhaustion/technical procedural default argument in this regard.

[13]   Rec. Doc. 13, p. 11.

Leban, which occurred on February 15, 2008 near the intersection of McCain Street and Old Gentilly Road in New Orleans.

At that time, Leban lived at 3601 McCain Street, on a dead end block under the Interstate 10 high rise. Leban lived alone in a tent next to his blighted house on a side of the dead end street with only an auto shop garage next to his property and a few trailers across McCain Street. A.J. Messina ran the auto shop garage but didn't live there. As a result, Leban kept watch on his block and the auto shop.

On February 14, 2008, Leban observed defendant drive down the street to the auto shop and begin speaking with A.J. Messina. Leban learned that A.J. had agreed to paint defendant's truck. The next day, February 15, 2008, around 2 p.m., Leban saw defendant bring a truck to the shop. Leban approached defendant and A.J., and told them that he would prefer that the truck be parked in the auto shop garage because he did not want to look after the truck parked on his street. Defendant agreed to have his truck placed inside the auto shop garage, and left in a tan vehicle with an unidentified person.

At 6 p.m. that evening, Leban observed defendant come back to the auto shop in a tan vehicle, but A.J. was not there. Defendant approached Leban asking about A.J. and wanting to contact him. Defendant asked to use Leban's cell phone to call A.J. When Leban handed it to him, defendant took the phone and drove away with it. Leban called 911 to report that his cell phone had been stolen. He told the 911 operator that the man who stole his phone had left his truck at the garage next door to Leban's house earlier that day. Leban then asked for officers to come out to the scene.

Responding to the dispatch call of a disturbance, National Guard Military Policeman Trevor Abney and his partner, Sgt. Litton, arrived on the scene at Old Gentilly Road and McCain Street to speak with Leban. Ofc. Abney and Sgt. Litton were on assignment to assist the NOPD with patrols and calls for service. When they arrived, Ofc. Abney spoke with Leban, and learned about the stolen cell phone. Ofc. Abney then notified the NOPD that the complainant, Leban, wanted to fill out a police report at the station the next day. At that point, Ofc. Abney and his partner left the scene.

Later the same evening, Leban was sitting in his car parked on McCain Street when defendant returned, and approached Leban's car. Defendant pointed a gun at Leban, and told him to go get the truck out of the garage or else defendant would shoot him. Leban walked with defendant up to the garage, but then turned and started to run away. As he was running, Leban heard

gunshots, one of which hit him, and he fell face down on the ground.

Mr. Oliver Harrison, who lived in a trailer on McCain Street, called 911 to report gunfire, and that a man was lying in the street. Ofc. Abney and his partner heard the NOPD dispatch call of aggravated battery by firearm at the same location they responded to earlier that day. Ofc. Abney and his partner responded to the call, and, upon arriving on the scene, the officers found Leban lying in the street with a gunshot wound to his back. Ofc. Abney asked Leban if the same man who had stolen his cell phone had shot him. Leban indicated to Ofc. Abney that it was the same person.

NOPD Det. James Shepak and Det. John Duzac arrived on the scene to investigate the shooting. In the course of their investigation, they learned that Leban identified the shooter as a man named "Rob" whose truck was being kept at the auto shop. A.J. Messina arrived on the scene and showed the detectives where the truck was being kept. Det. Shepak testified that Det. Duzac located a piece of paper on the ground next to the truck, and identified it as a letter from FEMA addressed to Robert Diggins ("FEMA letter"). Based on the information gathered from Leban, Messina, and the FEMA letter, the detectives developed defendant as a suspect in the shooting. Det. Shepak then compiled a photographic lineup that included a picture of defendant and five fill-in pictures.

Det. Shepak and Sgt. Chris Billiot then went to University Medical Center to conduct the photographic lineup with Leban. The detectives conferred with Dr. Mark Dominguez, the trauma surgeon attending to Leban, who informed them that Leban was alert, responsive, had not yet been administered any medications, and was able to talk with the detectives. With Dr. Dominguez as a witness, the detectives showed the photographic lineup to Leban, who identified the photo of defendant in the lineup as the shooter.

Based on Leban's identification of defendant, an arrest warrant was issued for Robert Diggins. He was arrested by the NOPD on April 30, 2008. On July 1, 2008, the State charged defendant with the attempted second degree murder of Leban.[14]

### Procedural Default (Claim No. 1)

In his first claim, Diggins asserts that the trial court erred in denying his motion to

---

[14] *State v. Diggins*, 126 So.3d at 778-79.

suppress evidence obtained from a warrantless vehicle search.    He argues that the illegally-obtained FEMA letter tainted the victim's subsequent photographic lineup identification because the letter bearing Diggins's name, coupled with the information gathered from the victim and the garage owner, allowed officers to develop Diggins as a suspect and compile a photographic lineup from which the victim positively identified Diggins.    Diggins filed a motion to suppress.    Following an evidentiary hearing, the motion was denied.[15]

The suppression claim was raised on direct appeal, but rejected as procedurally barred because the issue was not properly preserved for review as required under Louisiana Code of Criminal Procedure Articles 703(F) and 841(A),[16] either by urging these grounds in a motion to suppress or by lodging an objection when the evidence was admitted at trial.[17]

---

[15]  State Rec., Vol. 2 of 7, Suppression Hearing (April 1, 2009).    Detective James Shepack was the only officer to testify at the suppression hearing.    He stated that he was present when his partner, Detective Duzac, found the letter outside of the truck on the ground of the garage.    Detective Shepack was injured on duty and unable to testify at trial. However, Detective Duzac testified at trial that he recovered the letter from the front seat of the truck.    This was contradicted by Detective Bilott's testimony on cross-examination that the letter was found outside of the truck.    The defense did not object to the admission of the FEMA letter at trial.    State Rec., Vol. 3 of 7, p. 118.

[16]  Article 703(F) provides that the failure to file a motion to suppress evidence prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress.    Article 841(A) provides that an irregularity or error cannot be raised on appeal unless an objection was made at the time of the occurrence.

[17]  *Diggins*, 126 So.3d at 781-82.    *See* State Rec., Vol. 1 of 7, Defendant's Motion for Preliminary Hearing, Discovery, Suppression of Evidence and Bill of Particulars; State Rec., Vol. 2 of 7 (Suppression Hearing Transcript); State Rec., Vol. 3 of 7, (Trial Transcript), p. 118. The Louisiana Fourth Circuit was aware of, but declined to consider as part of the discussion, Diggins's own pro se "boilerplate" motion to suppress that was also included in the record. The appellate court observed that even the trial court was not required to entertain a pro se motion from a represented defendant; hence, the appellate court's discussion took into

The Louisiana Supreme Court denied relief without additional reasons. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state-court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and to federal review of claims that are raised on either direct or habeas review. *Amos*, 61 F.3d at 338.

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Id.* To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902. If a state court applies a procedural bar, but goes on to alternatively address the merits of the federal claim, the claim is still barred from federal review. *See Harris v. Reed*, 489 U.S. at 264 n. 10 ("[A] state court need not fear reaching the merits of a federal

---

account only the formal counseled motion. *Diggins*, 126 So.3d at 782 n 5.

claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. ... In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.") (citations omitted); *see also Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).

Here, the state courts relied upon the provisions of Louisiana Code of Criminal Procedure Article 841(A), because Diggins raised new grounds on appeal that were not included in his motion to suppress and no contemporaneous objection was made when the evidence was introduced at trial.    Under Louisiana law, it is well-settled that a new basis or ground for the motion to suppress cannot be articulated for the first time on appeal.    *State v. Brown*, 434 So.2d 399, 402 (La. 1983).    Louisiana Code of Criminal Procedure Articles 703(F) and 841(A) aim to prevent a situation where the trial court would not be afforded an opportunity to consider the merits of the particular claim.    *See State v. Peters*, 546 So.2d 829, 831 (La. App. 1st Cir.), *writ denied*, 552 So.2d 378 (La. 1989).    Here, the state-court ruling was based on Louisiana law setting forth the requirements for preservation and presentation of claims on appeal.    The ruling was independent of federal law and relied strictly on state procedural requirements.

Moreover, the statutory grounds cited above qualify as an "adequate" procedural ground because the state rule is "firmly established and regularly followed."    *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)); *see also*

*Glover v. Cain*, 128 F.3d at 902.    State procedural rules enjoy a presumption of adequacy when the state court expressly relies upon them in deciding not to review a claim, and the burden is on the petitioner to demonstrate otherwise.    *Glover*, 128 F.3d at 902; *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999).    It is well-settled that Louisiana's contemporaneous-objection rule is an independent and adequate state procedural ground sufficient to bar federal review of this claim.    *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977)); *Marshall v. Cain*, Civ. Action No. 04-219, 2006 WL 2414073 (E.D. La. Aug. 18, 2006) (Zainey, J.) (Order adopting Report and Recommendation).    The state court's reasons for dismissal of Diggins's claim were therefore independent of federal law and adequate to bar review of his claim in this Court.

In order to overcome the procedural default doctrine, Diggins must demonstrate "cause" for the default and prejudice resulting from the default, or show that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice*.    Amos v. Scott*, 61 F.3d at 339 (citations omitted).    To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.    *Murray v. Carrier*, 477 U.S. 478, 488 (1986).    In this case, Diggins has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.    The Court's review of the record does not support a finding that any factor external to the defense prevented him from raising the claims in a procedurally proper manner.    Nor does the record reflect any action or inaction on the part of the State which prevented him from doing

so.  "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."    *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

Finally, to establish a fundamental miscarriage of justice, a petitioner must provide evidence that would support a "colorable showing of factual innocence."    *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray v. Carrier*, 477 U.S. 478, 496; *Glover*, 128 F.3d at 902.    Diggins presents no evidence to support a claim of actual innocence that would excuse his procedural default.    Thus, Diggins's defaulted claim is procedurally barred from review by this Court.[18]

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts

---

[18]  The Court notes that to the extent Diggins advances a Fourth Amendment claim stemming from the alleged illegal search and seizure of the FEMA letter, that claim would not be cognizable in any event.    *Stone v. Powell*, 428 U.S. 465 (1976).    Where a state has provided the petitioner with a full and fair opportunity to litigate his Fourth Amendment claims, habeas corpus review is not available to challenge evidence introduced at trial on grounds of an unconstitutional search and seizure.    *Id.* at 481.    Louisiana has procedures by which an accused may challenge evidence obtained as a result of an alleged unconstitutional search and seizure on Fourth Amendment grounds at the trial level and on direct appeal.    Having been afforded the opportunity under Louisiana law to present the claim, Diggins is precluded from raising it on federal habeas review.    *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012).

in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct.

1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Richter*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

*A. Withholding Exculpatory Evidence*

Diggins contends his due-process rights were violated when "the State withheld exculpatory evidence of booking photos of the petitioner that were material and inconsistent with identification testimony."[19]    On direct appeal, the Louisiana Fourth Circuit rejected this claim following the law-of-the-case doctrine and the Louisiana Supreme Court's

---

[19]  Rec. Doc. 3-1, p. 11.

interlocutory ruling, rendered on the State's supervisory writ during trial, that the

photographs did not constitute *Brady* material.    The court of appeal explained:

> This issue has already come before this court and the Louisiana Supreme Court
> on the State's application for supervisory writs during trial. At trial, defense
> counsel made a motion to the court, outside the presence of the jury, for the
> State to turn over any photographs taken of the defendant from November,
> 2007 through the date of the shooting on February 15, 2008. Defense counsel
> contended that defendant had dreadlocks at the time of his arrest in April
> 2008, but the victim, Leban, stated during cross-examination that he did not
> recall the shooter having dreadlocks. Defense counsel argued that, if the State
> had photographs of the defendant with dreadlocks in the months prior to the
> shooting, then that evidence should be considered exculpatory. Following an
> *in camera* inspection of the photographs that the State had not turned over to
> the defense, the trial court granted the defense motion and ordered the State
> to disclose the photographs to the defense. The State argued to the court that
> the photographs were not exculpatory evidence, refused to turn over the
> photographs to the defense, and applied to this court for supervisory review
> of the trial court's ruling.
>
> On review of the State's application for supervisory writ, this court found that
> the trial court's ruling was not an abuse of discretion and denied the writ. *State
> v. Diggins*, unpub., 2010–0678 (La. App. 4 Cir. 5/10/10). The State then applied
> to the Louisiana Supreme Court, which reversed the ruling of the trial court
> and this court, held that the photographs of the defendant did not constitute
> *Brady* material, and denied the defense motion to produce the photographs.
> *State v. Diggins*, unpub., 2010–1076 (La. 5/10/10).
>
> Defendant has presented no new evidence that the prior ruling of the
> Louisiana Supreme Court on this issue was in error. Following the "law of the
> case" doctrine, we will not reconsider this issue on appeal. *See State v.
> McElveen*, 10–0172, p. 23–24 (La. App. 4 Cir. 9/28/11), 73 So.3d 1033, 1054;
> *State v. Davis*, 09–0438, p. 12–13 (La. App. 4 Cir. 1/13/10), 30 So.3d 201, 207–
> 08. Thus, this assignment of error has no merit.[20]

The Louisiana Supreme Court subsequently denied relief.

This Court's review of the state court's determination is limited.    The United States

---

[20]  *State v. Diggins*, 126 So.3d at 783.

Fifth Circuit Court of Appeals has explained:

> Under AEDPA, [a federal court] do[es] not decide *de novo* whether a state prisoner has sufficiently proven a *Brady* violation. *See Yarborough v. Alvarado*, 541 U.S. 652, 665, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter."); *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (en banc) ("We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect."). Rather, [a federal court] decide[s] whether the state court's *Brady* determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law. *Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004).

*Dickson v. Quarterman*, 462 F.3d 470, 477-78 (5th Cir. 2006); *see also Cobb v. Thaler*, 682 F.3d 364, 377 (5th Cir. 2012) ("The *Brady* materiality determination is a mixed question of law and fact.") (citing *LaCaze v. Warden La. Corr. Inst. for Women*, 645 F.3d 728, 736 (5th Cir. 2011)).    For the following reasons, Diggins has not satisfied the requisite standard for granting federal habeas relief.

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."    *Brady v. Maryland*, 373 U.S. 83, 87 (1963).    The prosecutor's duty to provide favorable evidence includes impeachment evidence and exculpatory evidence.    *United States v. Bagley*, 473 U.S. 667, 676 (1985).    To prevail on a *Brady* claim, a petitioner "must show that (1) the state withheld evidence, (2) the evidence was favorable to the accused, and (3) the evidence is material to guilt or punishment."    *DiLosa v. Cain*, 279 F.3d 259, 262-63 (5th Cir. 2002).

In its response, the State asserts that the issue turns on the materiality of the

undisclosed evidence.[21]   "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."   *United States v. Bagley*, 473 U.S. at 682.   The Supreme Court delineates such evidence as "material in the sense that its suppression undermines confidence in the outcome of the trial."   *Id.* at 678.

Considering the record as a whole, the undisclosed photographs in Diggins's case do not satisfy the materiality test; that is, Diggins cannot show that "there is a reasonable probability" that the result of the trial would have been different if the suppressed documents had been disclosed to the defense.   Stated otherwise, the photographic evidence could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."   *Strickler v. Greene*, 527 U.S. 263, 290 (1999) (citing *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

In support of his *Brady* claim, Diggins points to photographs the State had in its possession depicting Diggins's hairstyle between November 2007 and the February 15, 2008 incident.   Diggins maintains that a November 2007 booking photo shows that he had dreadlocks three months before the incident.   He also points to the fact that he had long dreadlocks when he was arrested and booked for this incident on April 30, 2008.   Thus, he argues "by inference and common sense, the evidence suppressed by the State shows that defendant had long dreadlocks, not a short bush haircut [as the victim testified at trial] on

---

[21]   Rec. Doc. 13, p. 20.

the day of the incident in February of 2008."[22]    The photographs were sealed at the State's request and made a part of the state-court record in this case.[23]    Diggins contends "photographic evidence showing that [the victim] was wrong in his identification would have resulted in a different verdict."[24]    However, the State counters that the mere fact the photographs might have been helpful to the defense does not render them material in the sense that their suppression would undermine confidence in the outcome of the trial.

Because the victim was the only witness called by the State to identify Diggins as the perpetrator, the accuracy of his identification testimony was certainly a critical issue at trial. Defense counsel explored this issue with the victim at length on cross-examination.    The defense brought out that he was unable to provide a detailed description to the 911 operator of the individual who took his phone earlier that evening.    When the operator asked what clothes the individual was wearing, the victim told the operator "he wasn't paying that too much attention."[25]    Defense counsel had the defendant with his current longer hairstyle approach the victim during trial and posed the question:    "If this man had two or three inch

---

[22]    Rec. Doc. 3-1, p. 24.

[23]    State Rec., Vol. 4 of 7, Trial Transcript (May 11, 2010), pp. 290-91; *see also* State Rec., Vol. 5 of 7 (Motion to File Exhibits under Seal, Exhibits F-1 through F-14).    The photographs consist of driver's licenses issued to Diggins between September 1999 and December 2007, as well as booking photos.    The photocopy quality of the booking photos contained in the state-court record is quite poor and the dates on some are not legible.

[24]    Rec. Doc. 3-1, p. 26.

[25]    State Rec., Vol. 3 of 7, Trial Transcript (Leban-cross-examination), p. 205; *see also* pp. 185-86 (Leban-direct examination).

dreads on February 15, 2008, he's not the man you've described as shooting you, is he?"[26]
The victim explained that the perpetrator's hair was different and shorter at the time of the
shooting, and that he did not remember dreadlocks on the perpetrator at all.[27]

Diggins has offered nothing to show that photographic evidence of his hairstyle three
months before the incident in question would have led a reasonable juror to discount the
reliability of the victim's identification testimony.   Considering the fact that hairstyles may
be altered readily the photograph added little to the defense, particularly in light of the
victim's testimony that he was more focused on the perpetrator's face rather than his
hairstyle and his steadfast assurances that he knew the individual's face and was sure it was
the same person because he had seen him several times that day in connection with the truck
in the nearby garage.   Furthermore, the State's sealed file contained photographs besides
the November 2007 booking photo, taken even closer to the incident, in which his hair
appeared shorter and identical to how the victim described his hairstyle at the time of the
shooting in February 2008.   In fact, the State planned to offer a December 2007 driver's
license photo into evidence on rebuttal if the defense had introduced a photograph of
Diggins, in order to refute the defense's evidence.[28]   Additionally, the name of the
defendant ("Rob") known to the victim and the garage owner matched the paperwork linked
to Diggins and found near the truck.   When shown the photo array, the victim immediately

---

[26]   *Id.* at 208-09.

[27]   *Id.*

[28]   State Rec., Vol. 5 of 7, Motion to Supplement State's Writ, p. 3 - Exhibit F-6.

positively identified Diggins as the perpetrator.    Because the identification was made at the hospital in the presence of his attending physician, who also provided his own signature, the State offered the physician's testimony at trial with regard to his observations surrounding the victim's identification.    He testified that the victim immediately identified the perpetrator.    Leban assured him that he recognized Diggins as the shooter.[29]    Under the circumstances, the undisclosed photograph of Diggins with dreadlocks three months before the incident was not material.

Even if jurors could have accorded some weight to the undisclosed photograph, this does not satisfy Diggins's burden of proof.    As this Court has reiterated in the past, undisclosed evidence that is merely helpful to the defense and perhaps might have undermined the reliability of a witness's observations is not necessarily "material" in a constitutional sense.    *See, e.g., Carraby v. Cain*, Civ. Action No. 13-3268, 2015 WL 5734378, at *8-9 (E.D. La. Sep. 30, 2015) (rejecting *Brady* claim with regard to undisclosed police reports that contained information theoretically useful to the defense in undermining the reliability of a key eyewitness's testimony); *see also Strickler v. Greene*, 527 U.S. at 291; *United States v. Agurs*, 427 U.S. 97, 109-110 (1976); *cf. Smith v. Cain*, 565 U.S. 73 (2012) (materiality established on *Brady* claim where key witness's testimony was the only evidence linking defendant to the crime, and witness's undisclosed statements directly contradicted his testimony).

Ultimately, this Court cannot conclude that the state-court decision "was so lacking in

---

[29]  State Rec., Vol. 3 of 7, Trial Transcript, pp. 70-73.

justification that there was an error well-understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.    Diggins has failed to demonstrate that the state-court decision denying his *Brady* claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1). Accordingly, this Court should defer to the state-court decision and likewise deny the claim.

*B. Prejudicial Comments and Evidentiary Rulings*

Diggins argues that he was denied a fair trial because the trial court made numerous prejudicial comments to defense counsel, infringed his right to present a complete defense by limiting testimony of defense witnesses and made biased hearsay rulings during trial.

1.  Prejudicial Comments

On direct appeal and in this Court, Diggins sets forth 20 record instances of alleged prejudicial comments and judicial bias by the trial judge.    The Louisiana Fourth Circuit addressed each comment specifically in a separate detailed appendix and determined after careful and thoughtful analysis that he was not denied a fair trial.    The appellate court determined the record "does not convince us that the trial court abandoned its neutrality, commented improperly on the evidence, made inappropriate comments in the presence of the jury, or conducted itself in such a manner to prejudice defense counsel or defendant."[30] In making this determination, the appellate court reasoned as follows:

> Defendant contends that the trial court made disparaging remarks to defense counsel that prejudiced the jury against the defendant. Upon our review of the

---

[30]  *State v. Diggins*, 126 So.3d at 805 (Appendix).

cited comments and remarks, in light of the harmless error standard of review, we do not find merit to defendant's argument that the trial court's comments prejudiced the jury or contributed to the jury's verdict.

During a jury trial, the judge has a duty to remain neutral and impartial, while administering the law through rulings on evidence and charging the jury as to the applicable law. *State v. Baldwin*, 388 So.2d 679, 686–87 (La. 1980). "A judge is more than a moderator; he is charged to see that the law is properly administered, and it is a duty which he cannot discharge by remaining inert." *United States v. Marzano*, 149 F.2d 923, 925 (2nd Cir. 1945); *see also Baldwin*, 388 So.2d at 686–87. In the discharge of his duties, the judge shall not comment upon the facts of the case in the presence of the jury, either by commenting on evidence or testimony or by giving an opinion as to what has been presented, proved, or not proved. La. C.Cr.P. art. 772.

If, during trial, a defendant believes that the trial court commented improperly on the evidence, or made prejudicial comments in the presence of the jury, then defendant should object at the time of the occurrence or move for a mistrial. *Baldwin*, 388 So.2d at 686; La. C.Cr.P. arts. 770, 775. A motion for mistrial or a contemporaneous objection to the alleged prejudicial comments or judicial bias preserves the issue for review on appeal. La. C.Cr.P. art. 841. *See State v. Ellwest Stereo Theatres, Inc.*, 412 So.2d 594, 597 (La. 1982).

We review claims of prejudicial comments or bias under a harmless error analysis.

> Harmless-error review looks ... to the basis on which "the jury *actually rested* its verdict." *Yates v. Evatt*, 500 U.S. 391, 404, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991) (emphasis added). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.

*Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). In order to constitute reversible error, the judge's improper comments must be such as to have influenced the jury and contributed to the verdict, thereby denying the defendant a fair trial. *State v. Johnson*, 438 So.2d 1091, 1102 (La. 1983).

Defendant cites twenty alleged prejudicial comments or disparaging remarks by the trial court. Upon a thorough review of all instances cited by defendant, the majority of the cited comments involve the trial court's moderating

function during trial.

The trial court has a duty to maintain control over the questioning of witnesses and presentation of evidence to the jury. In addressing similar comments made by the trial court in *State v. Jones,* this court noted,

> A trial judge has the responsibility to exercise control over the nature of the questions posed by counsel to ensure fairness and judicial economy. An unavoidable risk of this duty is that in the heat of a trial, adverse rulings may incorrectly appear to reflect the judge's opinion of a party, witness or theory of the case. Experienced trial lawyers aware of this risk weigh seriously these concerns in phrasing questions to a witness. Thus, the risk exerts a moderating influence on the excesses of advocacy.

*Jones*, 593 So.2d 802, 804 (La. App. 4th Cir. 1992).

In *Jones*, defendant complained of the trial court's comment that defense counsel's questioning of a witness was "out of line." *Id.* at 803. Similarly, in this case, one of defendant's complaints references the trial court's comment that defense counsel was "out of line." Defendant also cites two instances when the trial court asked defense counsel to stop making arguments or "side comments" to the jury during the questioning of witnesses. In this case, as in *Jones*, we find that these comments do not evince impartiality or bias. "The challenged remark of the trial judge, whether inappropriate or not, does not rise to the level of a prejudicial error which requires reversal. Standing alone, the remark does not evidence the judge's abandonment of neutrality which is required to constitute prejudicial error." *Jones*, 593 So.2d at 804.

This court has reviewed and addressed each of the twenty cited instances of improper or prejudicial comments, and included an analysis of each in an appendix to this opinion.[31]   After review of the entire record and the trial court comments cited by defendant as prejudicial, we find no merit to defendant's argument that the comments prejudiced the jury against defendant and denied him a fair trial.[32]

---

[31]   See attached Appendix. We do not find that the inclusion of the twenty alleged prejudicial comments or our review of each within the body of this opinion would add any light or understanding to the issues presented.

[32]   *Diggins*, 126 So.3d at 783-85 (footnote in original).

Diggins attempts to build a case of improper bias on the part of the trial judge by combing through a trial that spanned four days and selectively parsing comments and rulings from their appropriate context.    Diggins cites to only one United States Supreme Court case in support of his position, *Liteky v. United States*, 510 U.S. 540, 555 (1994) (examining judicial bias not in the context of a due-process violation, but rather in the context of a motion for recusal under 28 U.S.C. § 455).    However, as the Supreme Court observed in *Liteky*, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."    Furthermore, neither Diggins's "ruling-based" or "comment-based" bias assertions establish either type of judicial bias recognized by the United States Supreme Court (*i.e.*, actual bias or presumptive bias).

The United States Fifth Circuit Court of Appeals has summarized the controlling law governing judicial bias as follows:

> Defendants in the American judicial system have the right to a fair trial, and part of this right is fulfilled by a judicial officer who impartially presides over the trial. *See, e.g., Bracy v. Gramley*, 520 U.S. 899, 904-05, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). However, "most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard." *Id.* at 904, 117 S.Ct. 1793. A judge will, however, violate a defendant's due process rights if he is biased against the defendant or has an interest in the outcome of the case. *Id.* at 905, 117 S.Ct. 1793. A likelihood or appearance of bias can disqualify a judge as well. *Taylor v. Hayes*, 418 U.S. 488, 501, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974). "A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him." *Edwards v. Balisok*, 520 U.S. 641, 647, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (citations omitted).
>
> Bias is a difficult claim to sustain under AEDPA because the Supreme Court's case law on bias has "acknowledge[d] that what degree or kind of interest is sufficient to disqualify a judge from sitting 'cannot be defined with precision.'

" *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)); *see also Ryan v. Clarke*, 387 F.3d 785, 793-94 (8th Cir.2004) ("Application of this vague standard, when viewed through the deferential lens of *Williams v. Taylor* and the AEDPA, necessarily leaves state courts considerable latitude to pronounce rulings that do not contradict, and are reasonable applications of, [relevant Supreme Court precedent]"). Generally, the Supreme Court has recognized two kinds of judicial bias: actual bias and presumptive bias. *See, e.g., Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) ("[V]arious situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."); *Bigby v. Dretke*, 402 F.3d 551, 560 (5th Cir. 2005) (evaluating a judicial bias claim and noting that because there was no presumption of bias from the defendant's attack on the judge, it was necessary to "examine the record for indications of *actual* bias on the part of the trial judge") (emphasis added).

Almost every bias case before the Supreme Court that has found a due process violation has done so based on presumptive bias. There are three situations in which the Supreme Court has found presumptive bias:

(1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi-judicial decision maker has the dual role of investigating and adjudicating disputes and complaints.

*Bigby*, 402 F.3d at 559 (citing Supreme Court cases).

*Buntion v. Quarterman*, 524 F.3d 664, 672-73 (5th Cir. 2008) (footnote omitted).

The record instances cited by Diggins clearly do not prove presumptive bias.    Nor does the record reflect any actual bias on the part of the trial judge merely because he ruled against defense counsel or corrected him on occasion.    As the court of appeal noted, many instances cited by Diggins reflect the trial court's attempt to manage or control the trial proceedings.    Furthermore, defense counsel in his zealous advocacy on behalf of his client persisted despite unfavorable evidentiary rulings and became argumentative with the trial

judge.[33]    The understandable impatience or exasperation reflected in certain exchanges on the part of the trial court, while perhaps regrettable, does not establish judicial bias or a federal due process violation.    *See Wang v. Holder*, 569 F.3d 531, 540 (5th Cir. 2009) (rejecting due process claim based on allegations that immigration judge was impatient, and therefore biased, where she failed to show any hostility due to extrajudicial sources or such a degree of hostility that fair judgment was impossible); *see also Patterson v. Cain*, Civ. Action No. 10-4587, 2011 WL 7962615, at *12-13 (E.D. La. Oct. 14, 2011) ("testy exchanges between judges and counsel when taken in context were not so egregious as to taint the proceedings, prejudice the jury, or in any way render petitioner's trial unfair or his resulting conviction unconstitutional"), *report and recommendation adopted* 2012 WL 1933748 (E.D. La. May 29, 2012).    Viewed in their proper context and on the record as a whole, the exchanges do not establish judicial bias or substantial prejudice sufficient to deprive him of due process. This claim is without merit.

   2.  Evidentiary Rulings

      Diggins argues that he was denied the right to present a complete defense and obtain a fair trial when the trial court restricted the only two defense witnesses, former NOPD Officer Ashley Terry and NOPD Officer Urlisa Dabney, from answering questions related to a police report from the night of the shooting.[34]    Diggins argues that the improper rulings

---

   [33] *See, e.g.*, State Rec., Vol. 4 of 7, pp. 303-329.    As the appellate court noted in its appendix, some of the alleged objectionable comments during these exchanges were not even made in the presence of the jury.

   [34] State Rec., Vol. 4 of 7, pp. 302 (Officer Terry) and 332 (Officer Dabney).

denied him the ability to establish inconsistencies in the victim's story and to refute the victim's account of the incident.[35]    The Louisiana Fourth Circuit set forth the relevant facts underlying the claim as follows:

> Defendant subpoenaed Ms. Terry, a former NOPD officer, and Ofc. Dabney to testify as defense witnesses. During trial, but out of the presence of the jury, the State made an oral motion in limine to prevent the defense from introducing hearsay testimony. The State argued that hearsay testimony would be elicited if the defense questioned these witnesses about a police report from the night of the shooting. Defense counsel argued that it intended to question the witnesses about what they observed when they arrived on the scene in response to the 911 call of the shooting. The trial court reminded defense counsel that the police report was inadmissible hearsay under the Louisiana Code of Evidence art. 802, and that the defense could not question the officers about the content of that report, but the trial court did not prevent defense counsel from calling these witnesses to testify as to their memory of the events.
>
> Both witnesses testified that they were working as NOPD officers on the night of the shooting. Ms. Terry testified that she had written a police report about that incident, but that she had reviewed it, and had no refreshed recollection of that specific incident and responding to that particular scene. Ofc. Dabney also testified that she did not remember the shooting incident in question or any events from that night. Thus, neither witness could testify as to her memory of events of that evening. La. C.E. art. 602.[36]
>
> Despite testifying that she did not remember the incident, Ms. Terry stated that she reviewed the police report from that incident, and acknowledged that she had written it. Defense counsel then attempted to ask Ms. Terry further questions about the scene of the shooting, the 911 call that prompted their response to the scene, and what the witness had reported to police. The State objected to defense's questions on the basis of preventing defense counsel from eliciting hearsay testimony. In sustaining these objections, the trial court repeatedly told defense counsel that the police report itself and the statements

---

[35]  *See* State Rec., Vol. 1 of 7, Proffered Police Report.

[36]  La. C.E. art. 602, Lack of personal knowledge, provides in pertinent part, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."

> taken from witnesses on the scene were inadmissible hearsay. We agree with the trial court's hearsay ruling, because a police report is specifically excluded as an exception to the hearsay requirement under La. C.E. art. 803(8)(b)(i), and defense counsel could not question the witness about events that she could not remember.[37]  *See State v. Casey*, 99–0023 (La. 1/26/00), 775 So.2d 1022, 1031.[38]

In denying the claim, the Louisiana Fourth Circuit found no error in the trial court's evidentiary rulings excluding the police report as hearsay and restricting the witnesses' ability to testify to the contents of the report, and no merit in his argument that he was denied a complete defense.    The Louisiana Supreme Court likewise denied relief.

To the extent Diggins may be suggesting that the state court erred in applying state law, that claim is not cognizable on federal habeas review.    A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."    *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law).    Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).

The only issue properly before this Court is whether the alleged improper exclusion

---

[37]    La. C.E. art. 803(8)(b)(i) provides, "Except as specifically provided otherwise by legislation, the following are excluded from this exception to the hearsay rule: (i) Investigative reports by police and other law enforcement personnel ...".

[38]    *State v. Diggins*, 126 So.3d at 785-86 (footnotes in original).

or admission of evidence constituted a denial of fundamental fairness under federal law. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) ("[A] state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness."); *Woods v. Estelle*, 547 F.2d 269, 271 (5th Cir. 1977).    "Erroneous exclusion of evidence is fundamentally unfair if the evidence was material in the sense that it was crucial, critical, and highly significant."    *Poretto v. Stalder*, 834 F.2d 461, 465 (5th Cir. 1987).

Whether grounded in the Sixth Amendment's guarantee of compulsory process or the more general Fifth or Fourteenth Amendment guarantee of due process, " 'the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683 690 (1986)).    "Few rights are more fundamental than that of an accused to present witnesses in his own defense.    In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."    *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (citations omitted); *Washington v. Texas*, 388 U.S. 14, 19 (1967).    "A defendant's right to present a complete defense under the Sixth Amendment is 'an essential attribute' of our criminal justice system but it is not without limits."    *United States v. DeLeon*, 565 F. Appx. 297, 303 (5th Cir. 2014) (citing *United States v. Najera Jimenez*, 593 F.3d 391, 402 (5th Cir. 2010) (internal quotation marks and citation omitted).    "[W]e have never questioned the power of States to exclude evidence through the application of

evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted." *Crane v. Kentucky*, 476 U.S. at 690 (citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).    A defendant does not have an "unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible," *Taylor v. Illinois*, 484 U.S. 400, 410 (1988), "but a restriction on the defendant's right to introduce testimony may not be arbitrary or disproportionate to the purpose it is designed to serve."    *Kittelson v. Dretke*, 426 F.3d 306, 320 (5th Cir. 2005).

The question of whether evidence is constitutionally admitted or excluded is a mixed question of law and fact.    *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir.), *cert. denied*, 522 U.S. 880 (1997).    Under the applicable standard of review, this Court therefore must determine whether the state-court determination is contrary to or involved an unreasonable application of Supreme Court precedent.

Enforcement of the hearsay rule in this case served a legitimate interest and was neither arbitrary nor disproportionate to the purpose it was designed to serve.    Diggins's misguided attempt to characterize enforcement of the hearsay rule as "arbitrary" stems only from his perception that the trial court indiscriminately allowed the State to introduce hearsay evidence over the defense's objections, but unfairly sustained the State's objections when the defense sought to introduce purported hearsay evidence.    However, as the state court of appeal correctly found, the police report could not be introduced into evidence because it was plainly inadmissible hearsay under Louisiana law.    Nor could the defense witnesses relate statements made by other individuals if those statements were included in

29

the report.   The State's motion in limine sought to prevent the defense from essentially reading certain details contained in the report into evidence in an attempt to bolster and corroborate Harrison's account related in his 911 call.   The trial court reasonably restricted the officers' testimony to their own actions and observations during the investigation.[39]   However, defense counsel was unable to elicit much information from the officers because neither officer could recall the incident even after reviewing the report.

The state courts reasonably determined that the restriction for impermissible hearsay was proper.   However, even assuming, *arguendo*, the restriction was improper, Diggins has not shown that the error resulted in a fundamentally unfair trial or the denial of his right to present a defense.   Specifically, Diggins objects to the limitations placed on the officers' testimony regarding "why the officers were called to the scene, whether the officer verified Oliver Harrison's identity and address, and any information that [Officer Terry] had about the 911 call."[40]   The record shows that defense counsel was allowed to question Officer Terry to a limited extent about these issues, but she had no recall of the event. Diggins also suggests that Officer Dabney's testimony was critical because she served as Officer Terry's supervisor and the State challenged Officer Terry "as inexperienced and incapable of writing a report or knowing why one was written."[41]   Notably, however, the State did not cross-examine or challenge Officer Terry's proficiency as an officer.

---

[39]  State Rec., Vol. 4 of 7, pp. 291-300.

[40]  Rec. Doc. 3-1, pp. 35-36.

[41]  Rec. Doc. 3-1, p. 36.

Regardless, whatever limited testimony the officers could have provided in this regard had minimal relevance to the defense.

Diggins was still able to obtain details about the crime scene to refute the victim's account by cross-examining other officers who were at the scene and conducted the investigation.   Furthermore, despite the restrictions imposed, the record reveals that the defense was not prevented from eliciting information from Officer Terry, the first officer on the scene, about the fact that no description of the perpetrator was ever provided to her,[42] in contrast to state witnesses, Detective Duzac and Officer Abney, who testified that the victim was able to provide them an identification of the perpetrator.   The jury also heard the 911 call and very different account of the incident given by the victim's neighbor, Oliver Harrison, as authenticated during an examination of Kathy Robinson from the New Orleans Police 911 Communications Center.   Although Harrison did not testify at trial, the 911 recording was introduced into evidence by the State without objection and played for the jury.[43]   The officers' testimony with regard to Harrison would have been cumulative and offered nothing critical or significant for the defense, especially given their inability to recall the incident.   Diggins was not denied a fundamentally fair trial by the limitation of their testimony.

---

[42]   State Rec., Vol. 4 of 7, Trial Transcript, pp. 331-32.

[43]   State Rec., Vol. 3 of 7, p. 27.   In closing argument, the defense used it to their advantage and suggested that the State did not want to investigate further or present Harrison as a witness to testify about his different version of the events.   State Rec., Vol. 4 of 7, p. 349.

Nor did the limitations effectively prevent Diggins from presenting a complete defense.    As the Supreme Court has observed, "[o]nly rarely" has it "held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence."    *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (per curiam).    Contrary to Diggins's suggestion that he should have been allowed to introduce hearsay evidence pursuant to *Chambers v. Mississippi*, *supra*, in order to establish inconsistencies in the victim's account, the Supreme Court has made it clear that the *Chambers* holding was narrow and tailored to the highly specific facts and circumstances presented in that case involving third-party confessions of guilt (declarations against penal interest) under circumstances assuring reliability; it "therefore does not stand for the proposition that [a] defendant is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence." *United States v. Scheffer*, 523 U.S. 303, 316 (1998); *see also Montana v. Egelhoff*, 518 U.S. 37, 52-53 (1996).    He has not established that the exclusion of evidence denied him the right to present a defense.    Accordingly, Diggins is not entitled to relief on this claim.

Finally, Diggins claims that the trial court's biased hearsay rulings denied him due process and a fair trial.[44]    He argues that the trial court both excluded and admitted evidence based on improper hearsay rulings.    The Louisiana Fourth Circuit rejected the claim on direct appeal, analyzing each of the seven instances raised by Diggins as follows:

> In the final sub-part of his third assignment of error, defendant argues that the trial court's inconsistent and improper rulings on hearsay favored the State,

---

[44]    As the State correctly noted in its response, Diggins has never alleged that his right to confrontation was violated.    Not having been raised in the state courts or here, that issue is not before this Court on federal habeas review.

prevented defendant from presenting a complete defense, and denied defendant a fair trial. Defendant supports this argument with seven alleged examples of the trial court's biased rulings on hearsay. Our review of the hearsay rulings cited by defendant reveals that defense counsel disagreed with the trial court's interpretation and application of hearsay rules, under Louisiana Code of Evidence arts. 801 through 806, regarding what testimony and evidence constitutes hearsay or an exception to hearsay. We review each hearsay ruling of which defendant complains.

1. Defendant complains that the trial court "stopped two attempts to solicit hearsay" during the State's questioning of Ofc. Abney, but allowed the State "to use hearsay on the essential question of identity."

While questioning Ofc. Abney about his contact with Leban after the shooting, the State inquired with the trial court if it could ask Ofc. Abney whether Leban made an identification of the shooter.[45]  The trial court requested a bench conference with counsel on this issue, which is not in the record, and then the State proceeded with its questioning of Ofc. Abney:

> MR. HESNI: Sir, you asked the man lying on the ground who had been shot a question. What did you ask him?
>
> WITNESS [OFC. ABNEY]: I said was it the same person who took your cell phone and shot you?
>
> MR. HESNI: Okay. Now, without telling us what he said, I merely want to know if you got an answer. Don't tell us what he said. Did he respond to your question?
>
> WITNESS [OFC. ABNEY]: We made eye-contact and he nodded his head in an up and down motion.

Although we do not have a record of the statements or arguments made during the bench conference, we are satisfied that the trial court correctly followed the law on hearsay by allowing the State to ask this question. Hearsay is a statement, other than one made by the declarant while testifying at trial, to

---

[45]  The State questioned Ofc. Abney about his response to the two 911 calls (Leban's call reporting his stolen cell phone and Mr. Harrison's call reporting the shooting). While questioning Ofc. Abney about his contact with Leban in response to the first 911 call, the trial court sustained a hearsay objection by defense counsel and then cautioned the witness again not to repeat what Leban had told Ofc. Abney.

prove the truth of the matter asserted. La. C.E. art. 801(C). Hearsay includes oral and written assertions and the nonverbal conduct of a person if it is intended by him as an assertion. La. C.E. art. 801(A). However, certain statements constituting hearsay by definition may be admitted pursuant to a hearsay exception.

Here, we find that Ofc. Abney's testimony is admissible evidence under the res gestae hearsay exception. See La. C.E. art. 404(B)(1); La. C.E. art. 801(D)(4). "The res gestae doctrine includes the testimony of witnesses and police officers pertaining to what they heard or observed before, during or after the commission of the crime, provided there is a continuous chain of events under the circumstances." *State v. Brown*, 03–1616, p. 14 (La. App. 4 Cir. 3/31/04), 871 So.2d 1240, 1250; *see also State v. Reese*, 250 La. 151, 194 So.2d 729, 733–34 (1967); *State v. Colomb*, 98–2813, p. 3 (La. 10/1/99), 747 So.2d 1074, 1076. Based on Ofc. Abney's testimony that he had communicated with Leban earlier the same day in response to the first 911 call, and learned that Leban intended to file a complaint against the person who stole his cell phone, the question asked of Ofc. Abney related to the officer's knowledge or observation of a continuous chain of events.

"Nevertheless, even if the complained of testimony was improperly allowed as an exception to the hearsay rule, the Supreme Court has long held that the admission of hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial." *State v. Everett*, 11–0714, p. 19 (La. App. 4 Cir. 6/13/12), 96 So.3d 605, 621 (citing *State v. Johnson*, 389 So.2d 1302, 1306 (La. 1980)). Here, Ofc. Abney's testimony corroborated the testimony of the victim/declarant, Leban, at the trial. Thus, based on our review of the record and the applicable hearsay rules, we find no error in the trial court's hearsay ruling.

2. Defendant next argues that the trial court improperly allowed the State to introduce into evidence statements made by A.J. Messina, who was not called to testify. Defendant directs this court to the State's questioning of Det. Duzac about the investigation at the scene of the shooting. Our review of the State's questions and Det. Duzac's responses reveals that Det. Duzac did not repeat any hearsay statements. Det. Duzac testified about the information he gathered during the course and scope of his investigation into the shooting. "The testimony of a police officer may encompass information provided by another individual without constituting hearsay, if it is offered to explain the course of the police investigation and the steps leading to the defendant's arrest." *State v. Maise*, 00–1158, p. 17 (La. 1/15/02), 805 So.2d 1141, 1152, *overruled on other grounds by State v. Bernard*, 09–1178, p. 7 (La. 3/16/10), 31

So.3d 1025, 1030; *see State v. Legendre*, 05–1469, pp. 11–14 (La. App. 4 Cir. 9/27/06), 942 So.2d 45, 52–54. Det. Duzac testified to the events leading up to the discovery of defendant's truck and the FEMA letter, but did not testify about statements made by A.J. Messina. We find no hearsay testimony, and thus, we find that the trial court properly overruled defense counsel's objection.

3. Defendant claims that the trial court erred by refusing to allow defense counsel to question Det. Duzac about his signature on the Major Offense crime scene sign-in sheet from the shooting investigation. Defendant contends that the signature sheet and Det. Duzac's testimony regarding it were admissible evidence, and the trial court made a biased and incorrect ruling.

The trial court ruled that the crime scene signature sheet was inadmissible, because Det. Duzac did not prepare that document or recall signing it. We find no error in this hearsay ruling because Det. Duzac could not testify to the contents of that document that he did not prepare or recall.[46]

4. Defendant argues that the trial court improperly admitted hearsay testimony by Ofc. Billiot regarding Leban's photo identification of defendant as the shooter. The State questioned Ofc. Billiot about Leban's photo line-up identification of defendant while at the hospital. Ofc. Billiot testified that he asked Leban if he would be able to identify the shooter. Ofc. Billiot then stated Leban "nodded his head indicated that—," at which point defense counsel objected to the testimony as hearsay. The trial court overruled the objection. Ofc. Billiot then testified that he showed Leban the photo lineup, and stated that Leban "did this to the picture (indicating), right here, indicating that this is the suspect who shot him." Defense made another hearsay objection, and the trial court stated: "when a person proceeds with his eyes, with his eyes, like you perceive me doing this with pen. It's not hearsay."

As we discussed with regard to the first hearsay example, hearsay includes the nonverbal conduct of a person if it is intended as an assertion. La. C.E. art. 801(A)(2). In contrast to our previous finding, we do not find a sufficient basis to apply the res gestae hearsay exception, or any other exception, to this testimony. Here, Ofc. Billiot had not communicated with Leban previously, and had no knowledge of the continuation of events linking the instant crime against him to a previous crime against him earlier that day. During his only interaction with Leban, Ofc. Billiot testified that he witnessed Leban indicate

---

[46]    The crime scene investigation signature sheet also constitutes inadmissible hearsay, under La. C.E. art. 803(8)(b)(i), as part of the investigative report of the crime.

his assertion that defendant was the shooter. This testimony was presented to prove the truth of the matter asserted.

Although Ofc. Billiot's testimony constitutes inadmissible hearsay, we find the trial court's error in improperly admitting the testimony was harmless. *See Brown*, 02–1217 at p. 14, 853 So.2d at 16. Louisiana jurisprudence holds that the admission of hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial. *State v. Williams*, 12–0252, p. 23 (La. App. 4 Cir. 4/17/13), 115 So.3d 600, 613; *State v. Johnson*, 389 So.2d at 1306. Ofc. Billiot's testimony was cumulative given Leban's testimony at trial identifying defendant as the person who shot him. Given the weight of Leban's testimony at trial, we conclude that the trial court's error in admitting Ofc. Billiot's testimony was harmless error.

5. As his fifth example of alleged biased rulings on hearsay, defendant directs this court to defense counsel's questioning of Ofc. Billiot during trial. Defendant describes a portion of the trial proceedings covering five pages of the trial transcript, but fails to point to a specific trial court ruling as biased or improper.[47]  Within this portion of the transcript, the court sustained three objections by the State in response to the following questions by defense counsel:

> MR. REGAN: Did Mr. Leban, the victim, describe the shooter as having short hair like that?
>
> * * *
>
> MR. REGAN: Are you aware from any documents from Mr. Leban's investigation was attacked by two men that night?

---

[47]  Defendant related the following as his fifth example of a biased ailing [sic] on hearsay:

Immediately after the Court ruled that (the victim's) alleged photo identification was not hearsay, the defense asked whether (the victim) described short hair or two men. The Court sustained objections, commenting, "Look at me. Don't look at the jury ... It's very basic ..." and told the jury to disregard the answer. The Court told the defense attorney to stop talking and would not let him put something on the record. (Tr. Trans., p. 155–157). When the Court refused to allow a question about the investigation, the Court told the defense attorney, "Don't try to circumvent the law ...", again refused to let the defense put anything on the record but announced, "Let the record reflect that (defense counsel) is starting to get agitated. Do you need to take a break?" starting an exchange about the Court refusing to allow the objection to be put on the record. (Tr. Trans., p. 158–159).

      * * *

MR. REGAN: Did your investigation indicate—that's your investigation—indicate that there were two people involved with him the night of the shooting?

The trial court sustained all three objections for hearsay. After sustaining the third objection, the trial court explained to defense counsel, "for the same reason and under the same law, I'm sustaining their objection to any attempt to introduce Shepak's police report." Ofc. Billiot had testified that Det. Shepak led the investigation, compiled the photo lineup, and authored the police report of the investigation, but Det. Shepak was unable to testify at trial due to an injury sustained while on duty. Considering Ofc. Billiot's testimony of his involvement in the investigation, the trial court reasoned that defense counsel was attempting to question Ofc. Billiot based on his knowledge of Det. Shepak's investigation and report.

In our review of defense counsel's questioning, the trial court's rulings on the first two questions cited above appear proper and nonprejudicial. As to the first question, defense counsel elicited hearsay testimony from Ofc. Billiot about Leban's statements describing the shooter. The second question references police investigative reports or documents which are excluded from the hearsay exception to public records and reports under La. C.E. art. 803(8)(b)(i). The third question, however, references Ofc. Billiot's investigation generally. The form of that question would not necessarily elicit hearsay testimony, and the trial court's ruling is arguably improper.[48] After

---

[48] By asking Ofc. Billiot whether his investigation indicated the involvement of two people, defense counsel framed the question in terms of the officer's course of investigation. Louisiana jurisprudence recognizes an explanation exception to the hearsay rule that allows police officers to describe the steps of an investigation leading to the arrest of a defendant. *State v. Legendre*, 05–1469, pp. 11–14 (La. App. 4 Cir. 9/27/06), 942 So.2d 45, 52–54.

The application of this exception is illustrated in *State v. Hawkins*, 96–0766 (La. 1/14/97), 688 So.2d 473. In that case, the investigating officer testified that an anonymous caller reported that there were three women in the vehicle with the defendant, who the caller stated was the perpetrator of the robbery and murder. The detective interviewed the women, who gave statements inculpating the defendant. They later testified at trial.... On review, the Louisiana Supreme Court in *Hawkins* held that the first part of the detective's testimony regarding the tip—his testimony that the caller stated that there were several individuals in the car with the perpetrator—was relevant and not hearsay. The court stated that this testimony squarely fit within the explanatory exception, because this testimony merely explained the course of the police investigation and the steps leading to the

the trial court's ruling, however, defense counsel rephrased his questions to Ofc. Billiot, and, without objection, established that Ofc. Billiot's investigation involved the development of only one suspect. Defense counsel's inquiry was satisfied. Thus, any error in the trial court's ruling to the third question, quoted above, was harmless.

6. As his sixth example, defendant complains that the trial court refused to allow defense counsel to question Leban about Mr. Harrison's 911 call reporting the shooting. Defense counsel asked Leban if he knew "why the man across the street said you were shot and pushed out of a car." Leban responded that he did not know who defense counsel was referring to, but then stated, "oh, you must be talking about the individual that asked me—." Before completing the statement, the trial court interrupted, cautioned Leban that anything Mr. Harrison said would be hearsay, and stated that the question calls for speculation and conjecture for Leban to answer questions about Mr. Harrison's statements. The trial court made this hearsay ruling on its own, without objection from the State.

The trial court properly ruled against defense counsel's question of Leban. Defense counsel asked Leban to speculate about why Mr. Harrison told the police that he saw Leban get pushed out of a car. Leban did not hear or observe Mr. Harrison make the statement, and Leban did not hear the 911 call. Leban could give only his opinion or speculate as to Mr. Harrison's own thoughts and statements. Lay witness are not generally permitted to give opinion testimony. La. C.E. art. 701 permits lay witnesses to testify in the form of opinion or inference only where such opinions or inferences are limited to those (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the testimony or the determination of a fact in issue. *See State v. Howard*, 98–0064, pp. 27–28 (La. 4/23/99), 751 So.2d 783, 813. Here, defense counsel's question prompted Leban to form an opinion about Mr. Harrison's thoughts, perceptions, and statements to police. Leban could not offer such an opinion under La. C.E. art. 701. Thus, we find no error in the trial court's refusal to allow Leban to respond to defense counsel's question.

7. As a final example of alleged biased hearsay rulings, defendant contends that the trial court allowed the State to offer hearsay testimony during its rebuttal closing argument by referencing an alleged deal between A.J. Messina and defendant to paint defendant's truck. Defense counsel objected to any

---

defendant's arrest. *Hawkins*, 1996–0766 at p. 5, 688 So.2d at 478.

*Legendre*, 05–1469 at p. 13, 942 So.2d at 54.

reference to an alleged deal as hearsay, prompting the trial court to tell the jury, "I cannot comment on the evidence. Jurors must rely on their memories as to what the evidence was."

A review of the closing statement cited by defendant reveals that the State referenced only Leban's testimony. The State did not discuss or repeat a conversation between A.J. Messina and defendant. The State merely reviewed the testimony of Leban about his previous interactions with defendant, which included Leban's observations of defendant bringing his truck to A.J. Messina's shop. In response to the objection, the trial court sufficiently instructed the jury to rely on the evidence. We find no error in the trial court's ruling or statement to the jury.

The foregoing review of the alleged biased trial court rulings, as part of our review of the entire trial transcript and record, reveals no prejudicial errors by the trial court. We find no harmful, reversible errors among the trial court rulings.

Having reviewed all of defendant's arguments within his third assignment of error, we find nothing in the record to support the contentions that he was prejudiced by trial court comments, denied a complete defense, or prejudiced by biased hearsay rulings. Thus, we find no merit to defendant's assertion that he was denied a fair trial.[49]

The Louisiana Supreme Court likewise denied relief.

With regard to the trial court's evidentiary rulings on objections under state law, it is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions."    *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).    A federal court is limited on federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States.    *Id*.    Thus, to the extent Diggins may claim that the state court misapplied state evidentiary hearsay rules, that claim does not warrant federal habeas relief.

---

[49]    *State v. Diggins,* 126 So.3d at 786-91.

As to his cognizable federal claim, Diggins contends that the rulings deprived him of due process and denied him the right to present a defense.    He sets forth several instances where the trial court found certain testimony impermissible based upon hearsay.    He alleges the first instance occurred when defense counsel was cross-examining Detective John Duzac about his signature on a crime scene sign-in sheet.    Detective Duzac explained that officers arriving at the scene of a crime sign a "Major Incident show-up document."    He acknowledged that his name and initials were on the document, but could not remember if he signed or someone else signed for him.    The document itself was not allowed into evidence and the trial court limited further questioning surrounding the document based on the State's objection that Detective Duzac had not prepared the document.    The ruling was narrow and limited Detective Duzac's testimony on this issue only after he testified that he did not prepare the document and could not recall signing it.    Regardless, however, there was no question that Detective Duzac was present at the crime scene and assisted in the investigation.    The fact that he was present and assisted in the investigation but was unaware of certain details was explained by the fact that he was not the lead investigator. The sign-in sheet and his testimony surrounding that document plainly had little value and could hardly be considered crucial, critical, and highly significant to Diggins's defense.

The next instance involved three hearsay objections that Diggins claims the trial court improperly sustained during defense counsel's cross-examination of Detective Chris Bilott. Defense counsel wanted to elicit whether the victim described the shooter as having short hair.    The other two questions involved his knowledge based on either documentation or

his investigation about the involvement of a second individual.    The appellate court determined that the questions about Leban's statement to the officer and about police investigative reports implicated hearsay and the rulings were proper.    Although the third question was arguably proper because it involved knowledge obtained from his investigation, the appellate court found any error in the ruling was harmless because the defense effectively elicited the information from the witness regardless.    Diggins has not shown that the rulings, even assuming any were improper, denied him a fundamentally fair trial.    The defense sought to use Detective Bilott's testimony to challenge the victim's credibility with regard to his alleged mistaken identification of the shooter.    However, the officer's testimony was not significant given that the victim himself later testified on cross-examination that the shooter had short hair and offered details surrounding his identification of the shooter from the photographic lineup.    Nor was additional testimony regarding the presence of another individual particularly significant in light of Detective Bilott's subsequent statement that the investigation developed only one suspect. [50] Detective Bilott had no relevant testimony to offer that pointed to the other individual as the shooter.    The exclusion of this testimony did not infringe on his right to present a defense or deprive him of a fair trial.

The last instance occurred during cross-examination of the victim when defense counsel tried to question him about Harrison's 911 call.    The line of questioning sought to elicit the victim's opinion as to why Harrison would tell a 911 operator that the victim was

---

[50]   State Rec., Vol. 3 of 7, Trial Transcript, p. 160.

pushed out of a car.    The defense obviously wanted to challenge the victim's version of the events and diminish his credibility.    During the exchange the trial court cautioned him that anything Harrison said to him would be hearsay.    The trial court also noted that it called for speculation and conjecture because Diggins had not heard the 911 call.    The state appellate court found that the ruling was proper.    Furthermore, defense counsel was not prevented from asking about the alternate version of the incident suggested by Harrison. Although the victim seemed slightly confused regarding the basis for counsel's questions, he flatly denied having been pushed out of a vehicle.    Any restriction of his testimony with regard to Harrison's 911 call did not deny Diggins the ability to present a defense or a fundamentally fair trial.

Diggins also contends the trial court's admission of hearsay over defense counsel's objections denied him a fair trial.    He points to four specific occasions, the first of which occurred during Officer Abney's testimony.    The trial court allowed the State to question him about how the victim nodded yes in response to Abney's question if the shooter was the same person who took his cell phone.    The appellate court found the ruling proper under the *res gestae* exception, but also noted that it would constitute harmless error regardless because it was merely cumulative.    The second instance occurred during Detective Duzac's testimony surrounding his discussions with A.J. Messina, who did not testify at trial.    The appellate court found that the testimony relayed only the content of discussions to explain the course of his investigation and not statements made by Messina.    The third instance occurred when Detective Bilott testified to what Leban said when Bilott asked him if he

would be able to identify the shooter.    The state appellate court found any error in admitting this hearsay harmless because it was cumulative to the victim's testimony.    The last alleged instance occurred during rebuttal closing argument by the State when the prosecutor discussed a deal made between Messina and Diggins to paint the truck.    The appellate court noted that the State simply reiterated the testimony that was offered by the victim at trial and did not repeat a conversation between the two individuals.    Hence the statement was not hearsay.

It cannot reasonably be argued that the admission of these statements was an error so extreme as to render Diggins's trial fundamentally unfair.    Even assuming, for the sake of argument, the admission was improper, the testimony cannot be said to have played a crucial, critical, and highly significant role in the trial.    The victim offered detailed and persuasive testimony in this case regarding how the shooting occurred and his certainty as to the identity of the shooter.    While the circumstances of the shooting were unusual and the shooting perhaps senseless, the jury obviously found the victim's testimony credible. Given the largely cumulative nature of the alleged hearsay and the victim's compelling testimony, the admission of the statements did not deny him a fundamentally fair trial.

Accordingly, Diggins has not shown that the state-court determination was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Diggins is not entitled to federal habeas relief on these claims.

### C. Closing Argument

Diggins claims that he was denied a fair trial because the trial court condoned

prosecutorial misconduct during closing argument.    He argues that "the prosecutor attacked the defense attorney, claimed the defense was "hiding" things, mocked the defendant during a courtroom emergency, and relied heavily on facts not in evidence."[51] He further argues that the trial court made comments in denying the defense's objections that were demeaning and undeserving, such as telling defense counsel to "cut it out" and that he was "out of line."

In rejecting this claim on direct appeal, the Louisiana Fourth Circuit considered each instance of alleged misconduct cited by Diggins, in the context of the entire trial.    The appellate court reasoned:

> In the first instance complained of, defendant asserts that the State accused defendant of "hiding something." Defendant directs this court to comments during the State's rebuttal argument, in which the State argued that it was not attempting to hide anything by not calling certain witnesses. The State made no reference or accusation that defense counsel or defendant was "hiding" something, but rather, the State clarified its own position and arguments. We find that defendant has misconstrued this comment. Even assuming that the State directed this remark at the defendant, we find that there was overwhelming evidence presented to the jury to support the guilty verdict, and such a comment would not constitute reversible error.

> Defendant also contends that there were three instances during closing arguments to the jury when the State criticized defense counsel's arguments or tactics as "a game," "pounding the table," and "wasting your time." In our review of the transcript, the State arguably exceeds the scope of proper argument by making comments about defense counsel's objections during the State's closing argument. *See State v. Jackson*, 568 So.2d 599, 603 (La. App. 4th Cir. 1990). Dramatic remarks, such as these, may exceed the scope of argument, but the trial court properly instructed the jury at the beginning of trial and before deliberations to follow the law and evidence rather than argument. Considering the overwhelming evidence against the defendant in this case, we are not convinced that these remarks influenced the jury or

---

[51]  Rec. Doc. 3-1, p. 44.

contributed to the verdict. *See Jackson*, 568 So.2d at 602; *State v. Byrne*, 483 So.2d 564, 573–74 (La. 1986). We do not find such comments constitute reversible error.

In four more examples of alleged improper arguments by the State, defendant contends that the State argued and relied on facts not in evidence in order to prejudice the jury, and divert the attention of the jury from the State's failure to meet its burden of proof.

In the first example, defense counsel objected to the following argument by the State:

> MR. PHILLIPS: You see, they want you to believe that Mr. Leban was thrown out of his vehicle. Well, I call you to use your common sense, based on your life experience. Now ladies and gentleman, if you push somebody out of a car—a moving car at that—don't you think you might see—
>
> MR. REGAN: Objection. There was no testimony to that—

As a second objectionable statement, defendant also cites the following statement by the State:

> MR. PHILLIPS: Now, if I'm pushed out of a vehicle—if I'm pushed out of a car, as you hear on the 911—and we're going to deal with the 911 tape. But if I'm pushed out of a moving car, that's speeding off—

In the context of the entire trial, we do not find that either of these arguments could have unduly prejudiced the jury. During opening statements, defense counsel argued to the jury that there was a witness who stated to the police that Leban was shot and pushed out of a vehicle to the ground. In the cross-examination of witnesses, defense counsel posed questions about the alleged witness, Mr. Harrison, and the alleged statement that he made about seeing a man pushed out of a vehicle. In light of the entire transcript and the opening and closing arguments of the State and defense, it appears that the State offered these remarks in rebuttal to the defense counsel's argument and theory of the case. *See State v. Vincent*, 07–239, p. 14 (La. App. 5 Cir. 12/27/07), 978 So.2d 967, 976. We do not find that these comments prejudiced the jury or contributed to the verdict.

Defendant also claims that the State argued on facts not in evidence by referencing an alleged deal between Messina and defendant to have the

defendant's truck painted. Messina, the mechanic from the repair shop, did not testify at trial. Defendant objected to any reference to an alleged deal as hearsay. In response to defense counsel's objection, the trial court stated to the jury, "I cannot comment on the evidence. Jurors must rely on their memories as to what the evidence was." We find that this instruction properly directed jurors to rely on the testimony and evidence presented during trial. The jury had heard Leban's testimony that he witnessed the defendant drop off the truck at the garage and have a conversation with Messina. He also testified that he spoke to defendant and Messina, and asked that the truck be parked in the garage rather than on the street. We are not convinced that the jury was influenced by the State's comments or that the comments contributed to the verdict, because the jury heard eyewitness testimony from the victim about his own interactions with the defendant.

In defendant's fourth complaint of the State arguing from facts not in evidence, defense counsel objected to the following statement:

> MR. PHILLIPS: [T]hree other bullets could have went in that trailer across the street, and severed three other spines ...

The trial court again did not sustain the objection but told the jurors to rely on their memory of the evidence presented. Leban testified that he heard multiple shots before he fell to the ground from his gunshot wound, but Det. Duzac testified that the detectives were unable to determine if more than one shot was fired.

The State's comment may exceed the scope of proper closing argument, because the State appealed to juror's emotions, sympathies and fears. *See State v. Eaton*, 524 So.2d 1194, 1208 (La. 1988) ("The Court has warned prosecutors they are not to turn closing argument into a plebiscite on crime."); *State v. Williams*, 96–1023, p. 15 (La. 1/21/98), 708 So.2d 703, 716. However, in light of the victim's testimony during trial and giving credit to the fair-mindedness of the jury, we are not convinced that these remarks contributed to the jury's verdict. *Id*.

In the ninth example of improper arguments, defendant claims that the State mocked the defendant when defense counsel interrupted the State's rebuttal to request a break due to "an emergency." The trial court denied the request for a break, but granted the subsequent request that defendant be excused from the courtroom. After defendant was excused from the courtroom, the State made the following remark:

MR. PHILLIPS: Sometimes, ladies and gentlemen, sometimes the truth hurts. Sometimes you can't stand up and realize what you did to people. You can't look them in the face and deal with it. You run from it.

This is real life. This is real life. And he was man enough to get up there and pull that trigger, wasn't he? He was man enough to do that. Well, now it's time to face the music.

The State's comments appear to be an expression of opinion on defendant's character and guilt, and such comments during closing argument are improper under La. C.Cr.P. art. 774. We note, however, that defense counsel did not object to these remarks during the closing arguments or make a motion for mistrial on the grounds of prejudicial conduct. La. C.Cr.P. art. 775. Even if the jury took these remarks as a personal comment on defendant's guilt, we are not convinced that these comments prejudiced the jury and contributed to the verdict considering the testimony and evidence presented during trial. *See State v. Martin*, 93–0285, pp. 18–19 (La. 10/17/94), 645 So.2d 190, 200–01 (finding prosecutor's characterization of defendant was improper under La. C.Cr.P. art. 774 but not so unfairly prejudicial as to warrant reversal); *see also Jackson*, 568 So.2d at 604; *Byrne*, 483 So.2d at 572.

In defendant's last complaint against the State's closing arguments, defendant contends that the State was allowed to present hearsay as direct evidence by replaying parts of a 911 recording and emphasizing statements made by the caller, Mr. Harrison, who was not called to testify at the trial. Defendant does not object to the introduction of evidence of the 911 recording of Harrison's call. Rather, defendant objects to the manner in which the State used the recording during closing arguments.[52] The State played Harrison's 911 call, stopped the recording several times and repeated statements made during the call.[53] Defense counsel objected several times to the State's repetition of Harrison's statements and argued that the State could have called Harrison as

---

[52] The State introduced both 911 recordings into evidence without objection by defense counsel. The State presumably introduced the recordings under the public records exception to the hearsay rule, La. C.E. art. 803(8) while questioning the New Orleans Police Communications Center 911 records custodian, Kathy Robinson. The State played both 911 recordings for the jury. Robinson did not testify as to any details of either recording. Later in the trial, Leban was questioned by both the State and defense counsel about his statements during his 911 call. No testimony was presented about the details of the second 911 call from Harrison, but the tape was played by both the State and the defense during the trial.

[53] The record does not include a transcription of Harrison's 911 call.

a witness, but the trial court overruled those objections.

Considering the State offered the 911 recordings into evidence in conjunction with the testimony of the New Orleans 911 records custodian, the recordings were admitted into evidence presumably under La. C.E. art. 803(8), the public records and reports exception to the hearsay rule.[54]  However, we do not have a trial court ruling on the admission of the 911 recordings in the record. No objection was made to the admission of the recordings into evidence. This court has previously found 911 tapes to be inadmissible hearsay used for the truth of the matter asserted. *Brown*, 02–1217 at p. 14, 853 So.2d at 16. Leban's 911 call was corroborated by his testimony at trial, but no testimony was presented about the contents and details of Harrison's 911 call. The State could not assert that Harrison's statements on the recording were a true and accurate representation of the scene of the shooting without presenting his testimony. The State improperly used the 911 recording of Harrison's call by presenting his statements as true statements of his perceptions of what happened the night of the shooting. We find that the trial court erred in

---

[54]  In *State v. Millican*, 03–1065, p. 4 (La.App. 1 Cir. 2/23/04), 874 So.2d 211, 213–14, the First Circuit reviewed the range of jurisprudence on the admission of 911 tapes as follows:

The jurisprudence on this issue is not totally consistent. *See, e.g., State v. Brown*, 02–1217 (La. App. 4th Cir. 5/28/03), 853 So.2d 8, 14 (court concludes it was error to admit a 911 tape, stating it was clearly hearsay, but further concludes it was harmless error); compare *U.S. v. Bradley*, 145 F.3d 889, 892–94 (7th Cir.1998) (court concludes 911 tape was neither confusing nor prejudicial, holding defendant's challenges on those grounds were insufficient to justify its exclusion); *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir.1995) (911 tapes admissible as either a public record or a business record, but because citizens making such calls are not under a duty to report, the statements on tapes must also satisfy a separate hearsay exception, such as present sense impression or excited utterance); *U.S. v. Sallins*, 993 F.2d 344, 347–48 (3rd Cir.1993) (even if the 911 record itself is admissible under Federal Rule 803(8), details as to the out-of-court statements made by the person who called 911 were not admissible unless covered by a separate hearsay exception); *State v. Ballos*, 230 Wis.2d 495, 505–07, 602 N.W.2d 117, 122–23 (App.9/21/99), *review denied*, 233 Wis.2d 84, 609 N.W.2d 473 (2/22/00) (911 tapes reporting fire and arson admissible as present sense impressions, excited utterances, or statements of recent perception exceptions to hearsay); *State v. Parker*, 1997 WL 195922 p. 5 (Tenn.Crim.App.4/23/97) (admission of a 911 tape as a public record was error, even though the contents of the tape qualified as an excited utterance, because the voices on the tape were not identified); *State v. Smith*, 868 S.W.2d 561, 576–77 (Tenn.1993) (affirms admission of 911 tape under excited utterance exception to the hearsay rule).

allowing the State's repetition of and emphasis on statements made in the recording. However, we are not thoroughly convinced that this error surely attributed to the verdict. *See State v. Everett*, 11–0714, p. 19 (La. App. 4 Cir. 6/13/12), 96 So.3d 605, 621; *State v. Johnson*, 389 So.2d at 1306. The jury heard the victim's testimony of the events leading up to the shooting and his identification of defendant as the shooter. Giving credit to the fair-mindedness of the jury in weighing the evidence and testimony presented, we find that the State's dramatic emphasis was not so unfairly prejudicial as to contribute to the verdict and warrant reversal.

Considering the comments complained of, both individually and cumulatively, we are not convinced that the jury was prejudiced or influenced by these comments or that the comments contributed to the verdict. There was overwhelming, properly admitted, evidence and testimony to support the jury's verdict. This assignment of error has no merit.[55]

The Louisiana Supreme Court likewise denied relief without additional reasons.

A prosecutor's comment does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the trial was rendered fundamentally unfair in violation of the Due Process Clause.    *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned.    The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations and quotations omitted); *accord Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988); *Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir. 1987).

The prosecutor's remarks must be evaluated in the context of the entire trial.    *Greer v. Miller*, 483 U.S. 756, 765–66 (1987) (citing *Darden*, 477 U.S. at 179); *Kirkpatrick v.*

---

[55]    *State v. Diggins*, 126 So.3d at 791-95 (footnotes in original).

*Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985).    Ultimately, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."    *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

For purposes of federal habeas review, a claim of prosecutorial misconduct presents a mixed question of law and fact.    *Brazley v. Cain*, 35 F. Appx. 390, 2002 WL 760471, at *4 n. 4 (5th Cir. Apr. 16, 2002).    The Court must determine whether the denial of relief was contrary to or an unreasonable application of Supreme Court law.

First, Diggins points to several objectionable remarks that he claims impugned defense counsel's integrity.[56]    He maintains that the prosecutor suggested the defense was hiding something; however, this is factually incorrect.    The record refutes the allegation and shows the comment was not directed at the defense.    The prosecutor was actually arguing on rebuttal, in response to defense counsel's closing argument regarding the absence of witness testimony, that the State had nothing to hide.

Diggins cites other instances where he alleges the prosecution criticized defense counsel's tactics.    The prosecution began its rebuttal argument suggesting that when the facts and law are not in your favor, you "pound the table," but saying it louder or more frequently does not make it true."    In response to defense counsel's frequent objections, the prosecutor told jurors, "And that's what I'm talking about…. This is a game" and "That's the pounding the table that I'm talking about."    Here, the prosecution's rebuttal argument

---

[56]    All of the objectionable comments occurred during Eusi Phillips's rebuttal closing argument.    State Rec., Vol. 4 of 7, pp. 355-400.

arguably sought to highlight the strength of the State's case based on the evidence presented. Defense counsel interrupted frequently during the State's rebuttal closing argument and the comments appear to be attempts to regain the jurors' attention from the distracting objections, which were not sustained, and to redirect the focus to the law and facts presented, rather than an attempt to personally attack defense counsel.    Similarly, after discussing the fact that the two defense witnesses had nothing relevant to offer due to their limited roles in the investigation, the prosecutor commented that the defense was "wasting [jurors'] time" calling the officers to testify.    In this context, the remark again was more of a comment on the strength of the State's evidence and the defense's inability to refute it, rather than a personal attack.    Additionally, specific instructions were given to the jury before deliberations that they must decide the facts from the testimony and the evidence and that statements made by the attorneys at any time during trial are not evidence.    In particular, jurors were instructed that opening statements and closing arguments are not to be considered as evidence.[57]    Absent extraordinary circumstances, jurors are presumed to follow the instructions given them by the court.    *See Greer v. Miller*, 483 U.S. at 766 n. 8. Viewed in the proper context, these comments did not render Diggins's trial fundamentally unfair.

Next, Diggins argues that in four instances the State improperly commented on facts not in evidence.    Two of the comments referenced the defense's theory that the victim was actually pushed from a moving vehicle.    The prosecutor challenged the jurors to use their

---

[57]  State Rec., Vol. 4 of 7, p. 405.

common sense and life experience when considering the injuries the victim sustained and the theory advanced by the defense.    A third comment referenced an alleged deal between Messina and Diggins which he argues was not presented as evidence at trial because Messina did not testify.    The fourth comment made by the prosecutor was that three other bullets could have hit a trailer across the street and severed three other spines.

As the United States Fifth Circuit has explained, "[t]he purpose of closing argument is to assist the jury in analyzing and evaluating the evidence."    *United States v. Washington*, 44 F.3d 1271, 1279 (5th Cir. 1995).    "A prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence. 'A prosecutor may not directly refer to or even allude to evidence that was not adduced at trial.' "    *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008) (quoting *United States v. Murrah*, 888 F.2d 24, 26 (5th Cir. 1989)); *see also Washington*, 44 F.3d at 1278 ("a prosecutor is not prohibited from 'recit[ing] to the jury those inferences and conclusions he wishes [the jury] to draw from the evidence so long as those inferences are grounded upon the evidence' ").    Each of these comments arguably offered such insight about evidence properly adduced at trial.    The State offered the suggestions in evaluating the defense theory advanced throughout trial in light of the medical evidence presented and based upon the victim's own detailed testimony about the events that led up to the shooting and how the shooting occurred.[58]    Even if the reference to three other bullets hypothetically going into the trailer across the street and severing three other spines

---

[58]    State Rec., Vol. 3 of 7, p. 55 (Dr. Mark Dominguez) and p. 161 (Daniel Leban).

appealed to jurors' emotions or sympathy, the comment was brief and isolated. The comment was also accompanied by the trial court's reminder to jurors, in response to defense counsel's objection, to rely on their memory of the evidence presented. That one hypothetical suggestion alone hardly invoked such emotion that jurors ignored the evidence presented. In the context presented, the appellate court did not unreasonably determine that even if the remark was improper it did not render the trial fundamentally unfair.

Diggins points to another objectionable comment that occurred during the prosecution's rebuttal when defense counsel asked for a break for Diggins due to an emergency. Ultimately, the trial court excused Diggins from the courtroom and the prosecutor remarked:

> Sometimes, ladies and gentlemen, sometimes the truth hurts. Sometimes you can't stand up and realize what you did to people. You can't look them in the face and deal with it. You run from it.
>
> This is real life. This is real life. And he was man enough to get up there and pull that trigger, wasn't he? He was man enough to do that. Well, now it's time to face the music.[59]

Diggins argues that the prosecutor mocked him when he left the courtroom. No objection was made by defense counsel to these remarks. On review, the court of appeal observed that the comments "appear[ed] to be an expression of opinion on defendant's character and guilt." Nevertheless, the relevant question is whether the isolated comments rendered Diggins's trial fundamentally unfair. The appellate court was not convinced that the comment prejudiced the jury and contributed to the verdict considering the testimony and

---

[59] *State v. Diggins*, 126 So.3d at 793.

evidence presented during trial.

Even though the remarks could also be viewed as a fair inference based on the evidence presented at trial (*i.e.* Leban described the perpetrator shooting him in the back and fleeing the scene), the timing of the remark undoubtedly drew unnecessary attention to Diggins's sudden exit and perhaps implied that his actions suggested guilt.    However, any potential prejudice was mitigated both by the fact that Diggins returned quickly and was present for virtually all of closing argument, and the court's specific instructions to the jury not to consider statements made by the attorneys or closing argument as evidence.

As the Supreme Court has reaffirmed, *Darden* sets forth the controlling law and *Darden* itself held that a closing argument considerably more inflammatory than the purported "mocking" in this case, did not warrant habeas relief.    *Parker v. Matthews*, 567 U.S. 37, 47-48 (2012) (citing *Darden*, 477 U.S. at 180, n. 11, 12, 106 S.Ct. 2464 (prosecutor referred to the defendant as an " 'animal' " and stated " 'I wish I could see [the defendant] with no face, blown away by a shotgun' ").    Indeed, the *Matthews* Court observed, "Particularly because the *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations,' (*Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)), the Sixth Circuit had no warrant to set aside the Kentucky Supreme Court's conclusion."    *Id.* at 48.    Considering the *Darden* benchmark, it was not objectively unreasonable for the state appellate court to conclude that the prosecutor's "facing the music" comment was not so inflammatory as to render his trial fundamentally unfair.

His last argument concerns the fact that the prosecutor was allowed over objection to play Harrison's recorded 911 call during his rebuttal closing argument.    Diggins contends the prosecutor influenced Harrison's words by his comments, which elevated the recording from hearsay to direct evidence that improperly influenced the jury verdict and denied him a fair trial.

The admissibility of the 911 tape is a matter of state law that is not before this Court on federal habeas review.    *Estelle v. McGuire*, 502 U.S. at 67-68.    The State introduced the 911 tape as evidence at trial without objection, and it was played for jurors.    The defense referred to the 911 recording and Harrison's statements during trial, and also relied on them during his closing argument to suggest the victim was lying because his version of the events conflicted with Harrison's observations.[60]    The State used the tape during closing rebuttal to refute defense counsel's suggestion that the State was hiding something by not calling Harrison to testify.[61]

Here, the tape was already in evidence without objection and had been played in its entirety for the jury.    Generally, "[p]rosecutors are ... permitted to comment on and emphasize portions of the evidence in closing arguments."    *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003).    In commenting on properly admitted evidence, a prosecutor may also discuss any reasonable inferences or conclusions that can be drawn from that evidence. *United States v. Mendoza*, 522 F.3d 482491 (5th Cir. 2008).    This Court has considered

---

[60]  State Rec., Vol. 4 of 7, pp. 346-49.

[61]  State Rec., Vol. 4 of 7, pp. 390-99.

similar arguments related to 911 recordings used during closing argument and found no violation of due process when played for the jury.    *See Harvey v. Andrews*, Civ. Action No. 09-4200, 2010 WL 744944, at *13 (E.D. La. Feb. 26, 2010) ("Harvey has failed to establish denial of either due process or a fair trial arising from the State's cross-examination or use of the 911 tape during closing arguments.).    The Court is not convinced there was any impropriety.

Nonetheless, even assuming the emphasis on Harrison's statements during closing argument was improper for the reasons given by the state appellate court, any possible prejudice was mitigated by the context surrounding the prosecution's commentary and the trial court's instructions not to consider attorneys' statements or closing arguments as evidence.    The prosecutor urged jurors to listen closely to the tape so that they could hear every word Harrison says, and he explained the logical inferences that could be drawn from those words in the context of the evidence presented at trial.    Moreover, the prosecutor told jurors candidly, "[I]f what I say don't make sense, then disregard it.    I submit to you it will."[62]    He reiterated this suggestion again after the tape was played, telling the jurors, "You heard what the witnesses said, and you think I said something they haven't said, then disregard what I said about it."[63]    Additionally, the trial court emphasized many times during the rebuttal closing argument that jurors were to rely on their memory as to what evidence was presented.    Here, considering the emphasis on the statements at issue in the

---

[62]    State Rec., Vol. 4 of 7, pp. 392-93.

[63]    State Rec., Vol. 4 of 7, p. 399.

context of trial and closing argument as a whole, Diggins has not shown that the prosecution's emphasis on the 911 call deprived him of a fair trial.

Accordingly, Diggins fails to establish that the state-court determination rejecting his prosecutorial-misconduct claims was either contrary to or an unreasonable application of clearly established Supreme Court law.

*D. Excessive Sentence*

Diggins argues that his life sentence as a fourth-felony offender is constitutionally excessive because he had committed no past crimes of violence and was a "relatively youthful offender" at the time of the instant attempted second-degree murder offense.[64] The Louisiana Fourth Circuit rejected this claim on direct appeal.    In denying the claim, the appellate court reasoned:

> We find that the trial court adequately complied with the guidelines of La. C.Cr.P. art. 894.1. During the sentencing hearing, the trial court referred to the findings on the defendant within the pre-sentence investigation report including three prior felony convictions, that served as the basis for his fourth felony offender status, and several other arrests for possession of controlled substances and carrying a concealed weapon. The trial court noted that defendant had received leniency from the court on prior charges with probation and suspended sentences, but defendant continued to commit crimes. The trial court stated that, based on defendant's criminal history and the violent nature of this crime, there was an undue risk that defendant would commit more criminal offenses if he received a lesser sentence. Finally, the court took into consideration the victim impact statement and the pre-sentence investigation interview with the victim who was permanently paralyzed from the abdomen down as a result of the instant crime.

---

[64]  Diggins was adjudicated a fourth-felony offender.    As a fourth offender, Diggins faced a sentencing range of 20 years to life imprisonment. La. Rev. Stat. § 15:529.1(A)(4)(a); *State v. Diggins*, 126 So.3d at 780.    His life sentence is the statutory maximum under state law.

> Based on the trial court's review of the record of this crime, the defendant's criminal history, the severe and life-altering nature of the offense, and the future risk of harm to others, we find that the trial court adequately complied with La. C.Cr.P. art. 894.1, and defendant's sentence of life imprisonment without probation or suspension is supported by the record. *See State v. Randall*, 10–1027, pp. 10–13 (La. App. 4 Cir. 6/22/11), 69 So.3d 683, 689–90 (holding the imposition of a maximum sentence of life imprisonment was not excessive for conviction of possession of cocaine where defendant was adjudged to be a fourth felony offender with prior convictions for manslaughter, two prior convictions for possession of cocaine, and numerous arrests for drug offenses, possession of a firearm by a felon, aggravated battery and armed robbery). Consequently, we find this assignment of error has no merit.[65]

The Louisiana Supreme Court likewise denied relief.

To the extent Diggins suggests that his sentence is unconstitutional under state law or that the state trial court failed to comply with state sentencing rules, he has not stated a cognizable federal habeas corpus claim.    *See, e.g., Butler v. Cain*, 327 F. Appx. 455, 457 (5th Cir. 2009) (claim that sentence violated state law is not cognizable in federal habeas proceeding.); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987) ("... a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus").    Federal habeas corpus relief is available to correct violations of federal constitutional law, not errors of state law.    *Estelle v. McGuire*, 502 U.S. at 67-68.    Accordingly, this Court cannot review a claim challenging the propriety of a sentence under state law.

To the extent he contends that his sentence constitutes cruel and unusual punishment under the Eighth Amendment, federal habeas review is available; however, that claim fails on the merits.    As a federal issue considered under the AEDPA, an excessive-sentence claim

---

[65]  *State v. Diggins*, 126 So.3d at 796-97.

presents a question of law.    *Chatman v. Miller*, Civ. Action No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); *Davis v. Cain*, 44 F.Supp.2d 792, 798 (E.D. La. 1999); *Jones v. Kaylo*, Civ. Action No. 99-0567, 1999 WL 544680, at *1 (E.D. La. Jul. 26, 1999).    Thus, Diggins must establish that the state-court decision affirming his sentence is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1).

A sentence within statutory limits will not be upset by a federal habeas court, unless grossly disproportionate to the gravity of the offense.    *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (upholding a life-sentence without parole for a first-time offender convicted of possessing 672 grams of cocaine); *Rummel v. Estelle*, 445 U.S. 263, 271 (1980) (upholding a life-sentence with the possibility of parole for the defendant's third nonviolent felony conviction for the crime of obtaining $120.75 by false pretenses); *see also Olivier v. Prince*, 2018 WL 1790165 (5th Cir. 2018) (citing *Ewing v. California*, 538 U.S. 11, 29-30 (2003) (upholding sentence of 25 years to life under three strikes law for felony grand theft of several golf clubs); *United States v. Gonzales*, 121 F.3d 928, 943 (5th Cir. 1997), *abrogated on other grounds by United States v. O'Brien*, 560 U.S. 218, 234, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992)).    As the Supreme Court has noted, the gross disproportionality principle applies sparingly to the "exceedingly rare" and "extreme" case.    *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003); *Rummel*, 445 U.S. at 272.

Diggins's life sentence, albeit the maximum allowed, falls within the limits set by the Louisiana legislature for a fourth-felony offender under Louisiana Revised Statute 15:529.1.

Moreover, when evaluating the excessiveness of a sentence imposed under an habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses." *See McGruder*, 954 F.2d at 316.    Diggins's three prior felony convictions included possession of cocaine, possession of heroin, and possession of stolen property over $500.00.    Diggins's sentence reflected not only the seriousness of the charged offense, *i.e.*, attempted second-degree murder, but also his significant prior criminal conduct.    As previously noted, the Louisiana Fourth Circuit Court of Appeal highlighted factors that sufficiently explained why the sentence of life imprisonment was proportionate and warranted for this crime.    Given the violent nature of the instant crime and his extensive criminal history, this case simply does not qualify as a rare situation in which the difference between the crime and the sentence was unconstitutionally disproportionate.

Accordingly, Diggins fails to demonstrate that the adjudication of his excessive-sentence claim was contrary to or involved an unreasonable application of clearly established Supreme Court law.    He is not entitled to relief on this claim.

### E. Ineffective Assistance of Counsel

Finally, Diggins asserts that he was denied effective assistance of counsel based upon defense counsel's unprofessional behavior at trial and his failure to file a motion for new trial, object to a portion of the jury charge, or defend him adequately during the multiple-offender proceedings.    Diggins raised three of these ineffective-assistance-of-counsel claims on direct appeal and one additional claim on collateral review.    The court of appeal

rejected the claims on direct appeal, stating:

> In his first assertion of ineffective counsel, defendant contends that the alleged prejudicial rulings catalogued within counsel's brief to this court reveal the inappropriate behavior of defense counsel during trial. Defendant previously argued in this appeal, in his third and fourth assignments of error, that the prejudicial comments and rulings of the trial court denied him a fair trial, but now defendant claims that defense counsel was responsible for provoking prejudice against him. Contrary to defendant's present claim of ineffective assistance of counsel, the record reflects that defense counsel advocated consistently in defense of his client. We thoroughly reviewed the record of this trial and each allegation of prejudicial remarks and rulings, but we found no merit to these allegations and no prejudicial error.

> Next, defendant asserts that defense counsel failed to file a motion for new trial on the basis of the suppression of the exculpatory photos. We note that the trial court allowed defense counsel two weeks post-sentence to file a motion for new trial, but counsel failed to file a timely motion. With regards to the suppression of the exculpatory photos, as stated in the second assignment of error, the Louisiana Supreme Court reviewed this issue and ruled that the photos were not exculpatory. The alleged exculpatory photos are not new evidence. Based on the "law of the case" doctrine, a motion for new trial, filed on the basis of exculpatory photos alone, would not be sufficient grounds to grant a new trial.

> Finally, defendant argues that defense counsel failed to examine the documents in support of the multiple bill, failed to file any motions in regard to those allegations that might support a life sentence, and was unprepared to offer any defense relative to the multiple bill.

> Our review of the record does not support defendant's complaints. Defense counsel reviewed the multiple bill prior to the hearing and protested defendant's innocence. Counsel stipulated to the State's witness' expertise in the field of comparison and identification of latent fingerprints and thoroughly questioned the expert under cross-examination. Defense counsel did not present a defense because there was none to be made. Defendant does not specify any available defenses that counsel failed to raise. The State proved beyond a reasonable doubt that defendant was a quadruple offender under the provisions of the Habitual Offender Law, La. R.S. 15:529.1(A)(4).

> With regard to the question of whether the defense attorney's performance was deficient, defense attorneys are entitled to a strong presumption that their

conduct fell within the broad range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2056.

The record in this case shows that the defendant has failed to carry his burden of proof to show that defense counsel's performance was deficient and that the deficiency prejudiced his case. Contrary to defendant's contentions, and, despite defense counsel's advocacy on behalf of defendant, the evidence and testimony presented to the jury overwhelmingly support the jury's verdict. We find no merit to defendant's final assignment of error.[66]

Similarly, on collateral review the state courts denied his ineffective assistance claim with respect to the jury charge.    The Louisiana Supreme Court determined that he did not show that he received ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.    Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

---

[66]    *State v. Diggins*, 126 So.3d at 798-99.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected his ineffective-assistance-of-counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must

defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford both the state court and the defense attorney the benefit of the doubt.    *Burt v. Titlow*, 134 S.Ct. 10, 13 (2013) (citing *Cullen v. Pinholster*, 563 U.S. at 190).    For the following reasons, the state court's determination is neither contrary to, nor an unreasonable application of, clearly established federal law.

Diggins asserts that defense counsel was constitutionally ineffective for provoking negative comments from the trial judge.    On the contrary, a review of the record reveals that defense counsel served as a zealous advocate for Diggins, as evidenced by his frequent, strenuous objections in order to protect his client's rights and ensure that Diggins received a fair trial.    Furthermore, even if the vigorous objections provoked some alleged negative comments by the trial judge, no prejudice resulted.    The Court has thoroughly reviewed his claims that the trial court's alleged prejudicial comments denied him a fair trial and found that those claims lacked merit.    Diggins has not shown a reasonable probability that, but for counsel's frequent objections, the result of the proceeding would have been different.

He next asserts that defense counsel was ineffective in failing to file a motion for new trial on grounds that the prosecution withheld exculpatory booking photos in violation of *Brady v. Maryland*.    On habeas review, scrutiny of counsel's performance "must be highly

deferential" and the Court will "indulge a strong presumption that counsel's conduct falls within the wide range of objectively reasonable professional assistance." *Strickland*, 466 U.S. at 689.    The *Brady* issue was considered during trial.    The state trial court sided with the defense and found that the State had an obligation to turn over the evidence, but that ruling was overturned by the Louisiana Supreme Court.    Defense counsel had no chance of having a motion for new trial granted based on the suppression of alleged exculpatory material that the highest state court found was not "*Brady* material."    *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections).    The interlocutory ruling on the *Brady* issue was appealable regardless, and appellate counsel included the preserved reviewable issue on direct appeal.    Counsel did not perform deficiently in failing to file the non-meritorious motion and Diggins suffered no prejudice as a result.

Diggins also asserts that defense counsel was unprepared to offer any defense relative to the multiple-bill proceedings.    He argues that counsel's inadequate preparation amounts to a denial of counsel under *Cronic* such that prejudice is to be presumed.    *United States v. Cronic*, 466 U.S. 648, 659–60 (1984).

To establish habitual-offender status under Louisiana Revised Statute 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony.    *State v. Staggers*, 03-655 (La. App. 5 Cir. 2003), 860 So.2d 174, 180 (citing *State v. Davis*, 02-387 (La. App. 5 Cir. 9/30/02), 829 So.2d 554).    Certified copies of court records evidencing prior convictions are sufficient to

prove the prior conviction.    *Id.*    However, independent proof, such as matching

fingerprints and other vital information, is required to show that the defendant is the same

person identified in those records.    *Id.* (citing *State v. Walker*, 01-348 (La. App. 5 Cir.

8/28/01), 795 So.2d 459, 463).

The record in this case reflects that defense counsel reviewed the multiple bill filed

by the State and required the State to prove the necessary elements for the multiple bill.[67]

During the multiple-offender adjudication, defense counsel thoroughly cross-examined State

witness Officer Joseph Pollard, who was offered as an expert in the field of taking

comparisons and identifications of latent prints, after which he informed the trial court that

he had no legal basis to object to the documents he had reviewed with the witness.[68]

Diggins specifies no particular defenses that should or could have been raised to the

multiple-offender bill or during the hearing in order to demonstrate that counsel was

constitutionally ineffective.    Counsel does not perform deficiently in failing to lodge a

meritless objection.    *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (counsel is not

required to make futile motions or objections); *see also Smith v. Puckett*, 907 F.2d 581, 585

n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure

to raise a legally meritless claim.").

Nor has Diggins shown that *Cronic* applies here.    As we have observed in the past,

"[t]he *Cronic* jurisprudence envisions situations in which counsel is appointed so late or is

---

[67]    State Rec., Vol. 4 of 7, Transcript of Multiple Offender Hearing, 2/25/11.

[68]    *Id.* at 20.

66

otherwise so incompetent as to have been essentially nonexistent.    Thus under the *Cronic* 'exception,' the Court may presume prejudice in the overall *Strickland* evaluation."    *Crochet v. Goodwin*, Civ. Action No. 13-3106, 2014 WL 5093995, at *5 (E.D. La. Oct. 8, 2014) (citations omitted).    As the record plainly shows, this is not a situation contemplated under *Cronic*, where Diggins was effectively denied counsel because the prosecution's case was not subjected to meaningful adversarial testing.    The instant claim fails under *Strickland*.

Finally, Diggins asserts that counsel was ineffective in failing to object to certain jury charges that allegedly "eroded and undermined the presumption of innocence."[69]    He acknowledges that the trial court properly instructed the jury on the defendant's presumption of innocence and the burden of proof during the reading of jury instructions, but alleges that subsequent portions undermined the presumption.    He argues that the trial judge improperly substituted "defendant" for the statutory term "offender" used in Louisiana Revised Statute 14:10, when instructing jurors on specific and general intent, thereby conveying that defendant committed the offense.    He also argues that the charge allowed the jury to infer that the defendant intended the natural and probable consequences of his acts, thereby infringing on his presumption of innocence.    The alleged objectionable jury charge provided:

> The Defendant is charged with the attempt to commit second degree murder. A person who has a specific intent to commit a crime and who does or omits an act for the purpose of intending directly to accomplishing his object, is guilty of an attempt to commit the crime intended.
> *    *    *    *
> Criminal intent. Ladies and Gentlemen of the jury, criminal intent may

---

[69]  Rec. Doc. 3-1, p. 52.

be specific or general. Specific criminal intent is that state of mind which exists when the circumstances indicated that the Defendant actively designed [sic] or prescribed criminal consequences to follow from his act or failure to act.

General criminal intent is present when the circumstances indicated that the Defendant must have averted to prescribe criminal consequences as reasonably certain to follow from his act or his failure to act.

Whether criminal intent is present, must be determined in light of ordinary experience.

Intent is a question of fact, which may be inferred from the circumstances. You may infer that the Defendant intended the natural and probable consequences of his acts.[70]

Here, Diggins fails to show that the jury instruction was improper under Louisiana law. In fact, these same arguments have been considered and flatly rejected by Louisiana courts, which have held the instructions to be proper statements of law. *See State v. German*, 2012-1293 (La. App. 4 Cir. 1/22/14), 133 So.3d 179, 204; *State v. Leyva-Martinez*, 2007-1255 (La. App. 3 Cir. 4/30/08), 981 So.2d 276, 283-84. The record does not support Diggins's assertion that the trial court erroneously instructed the jury with regard to criminal intent or attempt. He therefore cannot establish that the failure to lodge an

---

[70] State Rec., Vol. 4 of 7, pp. 408-409. Under state law, specifically, La. Rev. Stat. § 14:10, specific and criminal intent are defined as follows:

(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the *offender* actively desired the prescribed criminal consequences to follow his act or failure to act.

(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the *offender*, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. (Emphasis added).

objection to a *proper* statement of the law constitutes deficient performance.    Counsel does not render constitutionally ineffective assistance by failing to raise a meritless objection. *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (citing *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections."); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). Furthermore, even assuming defense counsel had objected to the instructions as improper for the cited reasons, the objection would have been properly overruled.    Thus, Diggins has not shown a reasonable probability that the result of the proceeding would have been any different had counsel objected to the jury instructions.

Moreover, the mere use of an erroneous instruction to the jury under state law is not a basis for federal habeas relief.    *Estelle*, 502 U.S. at 62.    Instead, the Court must focus on "whether the ailing instruction, by itself, so infected the entire trial process that the resulting conviction violates due process."    *Id.* at 72 (citations omitted).    In examining the challenged instruction, the Court does not look at it in "artificial isolation," but must consider it in the "context of the instructions as a whole and the trial record."    *Id.*    Here, even assuming the jury charge failed to follow state statutory language precisely, as Diggins suggests, based on the evidence presented at trial and given the jury instruction as a whole, it cannot be said that the reference had a substantial and injurious effect or influence in determining the jury's verdict.    Accordingly, this claim is without merit.

The state court's denial of relief on the ineffective-assistance-of-counsel claims was not contrary to or an unreasonable application of *Strickland*.    Thus, Diggins is not entitled

to federal habeas corpus relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Diggins's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[71]

New Orleans, Louisiana, this ___19th___ day of _____June_____, 2018.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[71] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.