ROBERT DIGGINS                                    CIVIL ACTION

VERSUS                                            NO.  17-3416

DARREL VANNOY, WARDEN                             SECTION: "B"(5)

## ORDER AND REASONS

Before the Court are the Magistrate Judge's Report and Recommendation to dismiss Robert Diggins's ("Petitioner") petition for habeas corpus relief (Rec. Doc. 16) and petitioner's objections to the Report and Recommendation (Rec. Doc. 17). For assigned reasons below,

**IT IS ORDERED** that petitioner's objections are **OVERRULED** and the Report and Recommendation are **ADOPTED** as the opinion of the Court; and

**It IS FURTHER ORDERED** the petition for issuance of a writ of habeas corpus is **DISMISSED WITH PREJUDICE**.

## Factual and Procedural Background

Petitioner is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. *See* Rec. Doc. 16 at 1. On May 11, 2010, a jury found him guilty of attempted second-degree murder. *See id.* According to the record, petitioner shot Daniel Leban ("Leban") in an attempt to regain access to his truck located inside A.J. Messina's ("Messina") auto shop. *See* Rec. Doc. 16 at 5-6. Petitioner became a suspect based on information gathered

from Leban, Messina, and a FEMA letter bearing petitioner's name found in Messina's auto shop. *See id*. Leban subsequently identified petitioner in a photographic lineup. *See id*. Dr. Mark Dominguez ("Dr. Dominguez"), the trauma surgeon attending to Leban, informed officers that Leban was alert, responsive, and had not been administered any medication at the time of the identification. *See id*.

On May 18, 2011 after previously being found a fourth-felony offender, the trial court sentenced petitioner to life imprisonment. *See id*. at 2. On October 23, 2013, the Louisiana Fourth Circuit Court of Appeal affirmed the conviction and sentence. *See id*. On May 23, 2014, the Louisiana Supreme Court denied petitioner's application for writ of certiorari. *See id*. at 2-3.

On or about July 20, 2015 petitioner submitted an application for post-conviction relief to the state district court. *See id*. at 3. On August 26, 2015, the state district court denied the application. *See id*. On October 19, 2015, the Louisiana Fourth Circuit Court of Appeal denied a related supervisory writ application. *See id*. On April 7, 2017, the Louisiana Supreme Court denied relief. *See id*.

On April 12, 2017, petitioner filed the instant federal application for habeas relief alleging that: (1) the trial court erred in denying his motion to suppress evidence obtained in the

warrantless search of his vehicle; (2) the State suppressed exculpatory photographic evidence in violation of *Brady v. Maryland*; (3) he was denied a fair trial based on prejudicial comments by the court, infringement on his right to present a defense, and biased hearsay rulings; (4) the trial court erred in allowing improper comments by the prosecutor during closing argument; (5) the life sentence was excessive; and (6) his counsel was ineffective because he provoked the trial court's prejudicial rulings, failed to file a motion for new trial, failed to object to jury charges, and failed to adequately prepare for the multiple bill hearing. *See id*. at 3-4. On October 2, 2017, the respondent filed a response to the habeas petition. *See* Rec. Doc. 13. On June 19, 2018, the Magistrate Judge issued a Report and Recommendation. *See* Rec. Doc. 16. On July 6, 2018, petitioner filed objections to the Report and Recommendation. *See* Rec. Doc. 17.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

The Magistrate Judge recommended that petitioner's petition for habeas corpus relief be dismissed with prejudice. *See* Rec. Doc. 16 at 1. The Report deemed petitioner's motion to suppress claim procedurally barred and found that petitioner failed to establish judicial bias or substantial prejudice in his claims concerning allegedly prejudicial comments and evidentiary rulings. *See id*. at 6-11, 20-43. The Report concluded that petitioner's claims of *Brady* violations, improper closing arguments, and

3

ineffective assistance of counsel did not establish the state court's decision was contrary to or involved an unreasonable application of federal law. *See id.* at 43-70. The Report further found that petitioner's life sentence was not contrary to or involved an unreasonable application of federal law. *See id.* at 57-60.

## LAW AND FINDINGS

### A. STANDARD OF REVIEW

Federal habeas corpus proceedings are subject to the rules prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. §2254; see *also Poree v. Collins*, 866 F.3d 235, 245 (5th Cir. 2017). For pure questions of fact, factual findings are presumed to be correct. *See* § 2254(e)(1). The applicant has the burden of rebutting this presumption by clear and convincing evidence. *See id.* However, a habeas writ may be granted if the claim's adjudication resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented. *See* § 2254(d)(2); *see also Hankton v. Boutte*, 2018 U.S. Dist. LEXIS 126899 *1, *10 (E.D. La June 29, 2018).

For pure questions of law and mixed questions of law and fact, state court determinations receive deference unless the decision was contrary to or involved an unreasonable application of federal law. *See* § 2254(d)(1); *see also Hill*, 210 F.3d at 485. A state

court decision is contrary to federal law if: (1) it applies a rule different from the governing law set forth in Supreme Court cases, or (2) it decides a case differently than the Supreme Court when there are "materially indistinguishable facts." *See Poree*, 866 F.3d at 246; *see also Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010). A state court decision involves an unreasonable application of federal law when it applies a correct legal rule unreasonably to the facts of the case. *See White v. Woodall*, 572 U.S. 415, 425 (2014). An unreasonable application of federal law must be objectively unreasonable; clear error will not suffice. *See Boyer v. Vannoy*, 863 F.3d 428, 453 (5th Cir. 2017)("The question under AEDPA is not whether a federal court believes a state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold.").

A district court reviewing a magistrate judge's report and recommendation may accept all sections of the report not objected to as long as those sections are not clearly erroneous. *See* FED. R. CIV. P. 72(b); *see also Gilker v. Cain*, 2006 WL 1985969 (E.D. La. May 30, 2006). However, de novo review applies to "specific, written objections" of a magistrate's report made within 10 days after being served with a copy of the report. *See* 28 U.S.C. § 636(b)(1)(c); *see also* FED. R. CIV. P. 72(b). A district court may then "accept, reject, or modify the recommended decision, receive

further evidence, or recommit the matter to the magistrate judge with instructions." *See* FED. R. CIV. P. 72(b).

B. <u>PROCEDURAL DEFAULT (MOTION TO SUPPRESS CLAIM)</u>

A question of federal law decided by a state court that rests on state grounds both independent of the federal claim and adequate to support that judgement will not be reviewed. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *see also Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). A procedural restriction is independent if the state court's judgement "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *See Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *See Glover*, 128 F.3d at 902. Louisiana's contemporaneous-objection rule has long been recognized as an independent and adequate state procedural ground sufficient to bar federal review. *See Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1997))("It is well-settled that the contemporaneous-objection rule is an independent and adequate state procedural ground.").

In order to overcome procedural default, a petitioner must prove cause for the default or demonstrate a fundamental miscarriage of justice. *See Amos*, 61 F.3d at 339. Cause is

established by a petitioner demonstrating some objective factor external to the defense impeded efforts to comply with the state court's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Although cause can be demonstrated by proving ineffective assistance of counsel, a petitioner must also show actual prejudice to overcome the procedural bar. *See id; see also United States v. Guerra*, 94 F.3d 989, 994 (5th Cir. 1996). "The movant makes this showing where he demonstrates that, but for the error, he might not have been convicted." *Guerra*, 94 F.3d at 994. A fundamental miscarriage of justice is established by a petitioner providing evidence that would support a "colorable showing of factual innocence." *See Kuhlmann v. Wilson*, 477 U.S. 436, 545 (1986).

Louisiana's contemporaneous-objection rule bars the Court from federal review on petitioner's motion to suppress claim. A new basis or ground for a motion to suppress cannot be articulated for the first time on appeal. *See Richardson* v. *Deville*, No. CV 17-10194, 2019 WL 1903291, at *5 (E.D. La. Apr. 29, 2019). Thus, the state court's reliance upon Louisiana Code of Criminal Procedure Articles 703(F) and 841(A) is both independent and adequate to support its judgement. Petitioner failed to properly file a motion to suppress or lodge an objection when the evidence was admitted at trial. *See* Rec. Doc. 16 at 7.

Further, petitioner's attempt to show cause by proving ineffective assistance of counsel need not be addressed because

7

this Court finds petitioner has not been prejudiced. Where a petitioner fails to demonstrate prejudice, a court may ignore any cause arguments. *See United States v. Shaid*, 937 F.2d 228, 233-34 (5th Cir. 1991). Given the testimony of Leban and the investigating officers, as well as Leban's photographic identification of petitioner, petitioner fails to demonstrate but for the inclusion of the FEMA letter he might not have been convicted.

Moreover, petitioner fails to prove a fundamental miscarriage of justice. Petitioners must show in light of all the evidence admitted that the trier of fact would have entertained a reasonable doubt of guilt. *See Kuhlmann*, *supra* at 444. Here, petitioner's objection provides no additional evidence of his actual innocence. *See* Rec. Doc. 17 at 1-8. Thus, petitioner fails to meet his evidentiary burden.

C. *BRADY* CLAIM

Petitioner fails to demonstrate how the booking photographs depicting him with dreadlocks were material pursuant to *Brady*. *See* Rec. Doc. 17 at 8-13. Under AEDPA, a federal court does not decide de novo whether a state prisoner has sufficiently proven a *Brady* violation. *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004); *see also Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002). Rather, a federal court decides whether the state court's *Brady* determination was contrary to or involved an unreasonable application of clearly established federal law. *See* § 2254(d)(1);

*see also Dickerson v. Quarterman*, 462 F.3d 470, 477-78 (5th Cir. 2004). Under *Brady*, suppression of evidence favorable to the accused violates due process when the evidence is material either to guilt or punishment. See *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is material where there exists a reasonable probability that had it been disclosed the result at trial would have been different. *See Banks v. Dretke*, 540 U.S. 668, 691 (2004). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (internal quotations omitted)). Alleging a speculative outcome is insufficient. *See Dickson v. Quarterman*, 462 F.3d 470, 478 (5th Cir. 2006). Materiality considers whether the allegedly favorable evidence can reasonably be seen as putting the whole case in such a different light as to undermine confidence in the verdict. *See Strickler v. Greene*, 527 U.S. 263, 290 (1999); *see also Carraby v. Cain*, Civ. Action No. 13-3268, 2015 WL 5734378, at *8-9 (E.D. La. Sep. 30, 2015)(finding the mere fact undisclosed evidence might have been helpful does not render it material); *Cf. Smith v. Cain*, 565 U.S. 73 (2012)(finding materiality on a *Brady* claim where a key witness's testimony was the only evidence linking the defendant to the crime).

The record indicates that the State's sealed file contained photographs taken close to the time of the incident that depict petitioner with hair as described by Leban. *See* Rec. Doc. 16 at

18. However, the State planned to offer a December 2007 driver's license photo into evidence on rebuttal had defense introduced the booking photographs. *See id*. at 18. Further, Leban testified that he was certain the shooter was petitioner and immediately identified him out of a photographic array shortly after the incident. *See id*. at 18-19. Given the totality of overwhelming other evidence against petitioner, it is not reasonable to assume that the jury would have reached a different verdict. *See United States v. Agurs*, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped . . . does not establish 'materiality' in the constitutional sense.") Accordingly, the state court's denial of this claim has not been shown contrary to or to have involved an unreasonable application of clearly established federal law.

D. STATE COURT PROCEEDINGS

*1. JUDICIAL BIAS CLAIM*

Petitioner sets forth twenty allegedly prejudicial comments and instances of judicial bias by the trial judge. *See* Rec. Doc. 17 at 16-19. The Court finds none of the instances prove either actual or presumptive bias by the trial judge. Defendants in the American judicial system have the right to a fair trial, not a perfect one. *See United States v. Bermea*, 30 F.3d 1539, 1569 (5th Cir. 1994)(stating "[the court's] role is to determine whether the judge's behavior was so prejudicial that it denied the defendant

10

a fair, as opposed to a perfect, trial.") Under AEDPA, bias is a difficult claim to sustain. *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822 (1986) (acknowledging that the degree or kind of interest sufficient to disqualify a judge from sitting cannot be defined with precision). A judge's actions or comments rise to the level of a constitutional violation only when they amount to an intervention that could lead a jury to a predisposition of guilt. *See United States v. Bermea*, 30 F.3d 1539, 1569 (5th Cir. 1994) (noting the judge's intervention in the proceedings must be quantitatively and qualitatively substantial to meet this test).

In order to prove a due process violation, a petitioner must establish that a genuine question exists concerning a judge's impartiality. *See Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005). Part of a judge's duty is to moderate and ensure that a trial by jury is properly governed. *See Quercia v. United States*, 289, U.S. 466, 469 (2008). Importantly, this duty cannot be discharged by remaining inert. *See id.*, *see also Herron v. Southern Pacific Co.*, 283 U.S. 91, 95 (1931). Here, the majority of petitioner's complaints deal with the trial judge's exercise of control over the questioning of witnesses and presentation of evidence. *See* Rec. Doc. No. 17 at 17-18. However, judicial rulings alone almost never constitute a valid basis for a bias or partiality argument. *See Liteky v. United States*, 510 U.S. 540, 555 (1994). Petitioner fails to demonstrate how the trial judge's

exercise and control of the nature of the questions presented established a genuine question of impartiality. The Magistrate Judge's findings here are clearly supported by the factual record and law.

The remainder of petitioner's contentions concern the trial judge's response to defense counsel's zealous advocacy. *See* Rec. Doc. 17 at 17-18. In order to give rise to a constitutional violation, heated exchanges between judges and counsel must be so egregious as to taint the whole proceeding. *See Patterson v. Cain*, Civ. Action No. 10-4587, 2011 WL 7962615, at *12-13 (E.D. La. Oct. 14, 2011)(finding testy exchanges between judges and counsel when taken in context were not so egregious as to taint the proceedings, prejudice the jury, or in any way render petitioner's trial unfair, or his resulting conviction unconstitutional). Here, despite unfavorable evidentiary rulings by the trial court, defense counsel continued to object and even became argumentative. *See* Rec. Doc. 16 at 24-25. The exchanges, when viewed in the context of the entire trial, do not support a finding that the jury was led to a predisposition of guilt. Accordingly, the claim is without merit based on our review of the trial record, the Magistrate Judge's review, and applicable law.

### 2. EVIDENTIARY & HEARSAY CLAIMS

Petitioner's argument concerning the trial judge's evidentiary and hearsay rulings is unconvincing. *See generally* Rec

Doc. 17 at 20-26. The question of whether evidence is constitutionally admitted or excluded is a mixed question of law and fact. *See Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir.), *cert. denied*, 522 U.S. 880 (1997). State court evidentiary errors warrant federal habeas relief only if the error "is of such a magnitude as to constitute a denial of fundamental fairness under the due process clause." *See Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983). The erroneous exclusion of evidence is fundamentally unfair if the evidence was material in the sense it was "crucial, critical, and highly significant." *See Poretto v. Stalder*, 834 F.2d 461, 465 (5th Cir. 1987)(citing *Skillern*, 720 F.2d at 852)). A conclusion of constitutional error will not be afforded relief unless the error had a substantial and injurious effect or influence on the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Federal courts do not sit as super tribunals to review errors under state law. *See Wilkerson v. Whitley*, F.3d 64, 67 (5th Cir. 1992). The proper issue for review is whether the alleged improper exclusion or admission of evidence constituted a denial of fundamental fairness under federal law. *See Little*, 162 F.3d at 862. Therefore, any argument relating to the state court's application of its state laws, standing alone, is not warranted.

To the extent petitioner's argument concerns a denial of fundamental fairness, petitioner fails to demonstrate how any of

the excluded evidence was material. *See generally* Rec. Doc. 17 at
20-26. Even if a federal court assumes a trial court committed an
evidentiary error, a habeas writ will not be granted unless the
error is classified as a significant one in light of all the other
evidence. *See Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir.
1986)("[a]ssuming error in the evidentiary ruling permitting the
introduction of the [evidence], we are persuaded beyond
peradventure that . . . the error did not carry such prejudice as
would warrant the issuance of the Great Writ."). Here, petitioner
was still able to obtain details about the crime scene and refute
Leban's account by cross examining other on-scene officer who
conducted the investigation. *See* Rec. Doc. 16 at 31. The record
also shows that defense counsel was not prevented from eliciting
testimony from the first officer on the scene that no description
of the perpetrator was ever given to her. *See id.* The jury was
also given the opportunity to hear the 911 call and Oliver
Harrison's different account of events. *See id.* Therefore, the
additional testimony or evidence would not have been material to
the outcome of the case.

Furthermore, the admitted evidence that petitioner contests
only had the effect of reiterating Leban's testimony or other
evidence already admitted in the trial. *See* Rec. Doc. 17 at 42-
43. Thus, the Court finds no basis for habeas relief considering

more injurious evidence implicating petitioner was admitted without objection.

### 3. PROSECUTORIAL MISCONDUCT CLAIM

Petitioner's contention that his due process guarantee of a fair trial was violated by the prosecutor's closing remarks is unpersuasive. *See* Rec. Doc. 17 at 27-31. Improper jury argument does not present a claim of constitutional magnitude unless it is so prejudicial that the state court trial was rendered fundamentally unfair. *See Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1998) (citing *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986)). A petitioner must prove the misconduct was persistent and pronounced, or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks. *See id.* The remarks must be evaluated in the context of the entire trial. *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987).

Petitioner misconstrues the prosecutor's comments that he was hiding something. *See id.* at 27. The comments were in response to defense counsel's closing argument regarding the absence of a witness. *See* Rec. Doc. 16 at 44-50 (defense counsel stating, "[a]nd you don't have a single [] officer who would come up and speak truth about what happened . . . because it doesn't help them in their case . . . .").

The instances involving the prosecutor's description of defense counsel's arguments or tactics as a "game", "pounding the

15

table", and "wasting your time" also do not warrant relief. *See* Rec. Doc. 17 at 27-28. Comments during rebuttal expressing a prosecutor's personal resentment of statements made by a defense counsel rarely constitute reversible error. *See Jones*, *supra* at 356. A prosecutor's remarks must infect a trial with such unfairness as to make the resulting conviction a denial of due process. *See Darden v. Wainwright*, 477 U.S. 168, 179 (2009). The touchstone of this due process analysis is the fairness of the trial, not the culpability of the prosecutor. *See Smith v. Philips*, 455 U.S. 209, 219 (1982). Because such comments must be considered against the overwhelming evidence against petitioner, the Court finds such statements did not render the trial fundamentally unfair.

Petitioner's argument that the state improperly relied on facts not in evidence is also unpersuasive. *See* Rec. Doc. No. 17 at 28. The purpose of closing arguments is to assist the jury in analyzing and evaluating evidence adduced at trial. *See United States v. Washington*, 44 F.3d 1271, 1279 (5th Cir. 1995). A prosecutor may make reasonable inferences and conclusions drawn from that evidence. *See United State v. Mendoza*, 522 F.2d 482, 491 (5th Cir. 2008). Here, the comment on Leban being pushed out of a moving car related to Dr. Dominguez's assessment that he did not find any injuries consistent with the defense's theory. *See* Rec. Doc. 16 at 52. Furthermore, given the totality of Leban's

testimony, the remark that "the other three bullets could have severed the spine of three other people" was not so substantial as to contribute to the verdict. This remark was isolated, accompanied by the trial judge's reminder to the jury to rely on the evidence, and the prosecutor's comment that the jury should disregard anything he said that was untrue. *See* Rec. Doc. 16 at 51-53. Thus, the comment does not warrant habeas relief.

The prosecutor's "truth hurts" comment also does not rise to the level required for a finding of a denial of due process. *See* Rec. Doc. 17 at 28. The question before the Court is whether the comment rendered the trial fundamentally unfair. *See Jones*, *supra* at 356. Here, any potential prejudice was mitigated by the trial court's specific instructions to the jury to rely on the evidence. *See* Rec. Doc. 16 at 54. Further, the Supreme Court has already held closing arguments considerably more inflammatory than the instant fail to warrant habeas relief. *See Darden*, 477 U.S. at 180 (prosecutor described the defendant as an "animal" and stated "I wish I could see [the defendant] with no face, blown away by a shotgun). Given noted appellate findings where more inflammatory remarks have failed to establish a violation of due process, the Court finds petitioner's claim insubstantial in comparison to that precedent.

Furthermore, petitioner's contention regarding the prosecutor's use of the 911 recording is not cognizable for

review. *See* Rec. Doc. 17 at 27. It is not within the province of a federal habeas court to reexamine the admissibility of a 911 tape on pure state law grounds. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (emphasizing federal habeas relief does not lie for errors of state law). Moreover, prosecutors are generally permitted to comment on and emphasize portions of the evidence in closing arguments. *See Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003). In commenting on properly admitted evidence, a prosecutor may discuss reasonable inferences or conclusions drawn from that evidence. *See Mendoza*, 522 F.3d at 491. Here, the State's emphasis on the 911 recording only emphasized what was already known by the jury. The jury already heard Leban's account of the events leading up to the shooting and the 911 recording in its entirety. *See* Rec. Doc. 17 at 55-56. Given the overwhelming evidence and the court's instruction to rely on the evidence, it cannot be concluded that the use of the 911 recording had a substantial or influential effect on the jury's determination. *See Cotton v.* Cockrell, 343 F.3d 746, 752 (5th Cir. 2003); *see also* Nethery v. *Collins*, 993 F.2d 1154, 1159 (5th Cir. 1993) (holding overwhelming evidence of guilt and presence of curative instruction rendered harmless an impermissible comment by prosecution). Petitioner's claim does not warrant habeas relief.

    E. <u>INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM</u>

Petitioner contends counsel was ineffective because of: (1) his behavior during the sentencing hearing, and (2) his failure to object to portions of the jury charges. *See* Rec. Doc. 17 33-40. Ineffective assistance of counsel claims present a mixed question of law and fact. *See Richards v. Quarter*, 566 F.3d 533, 561 (5th Cir. 2009). Under *Strickland*, attorneys are entitled to a strong presumption that their conduct falls within the broad range of reasonable professional conduct. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984). A counsel's challenged conduct must be judged based on the reasonableness of his actions in light of all the circumstances. *See Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993). Petitioners must prove deficient performance and prejudice therefrom. *See id*. at 686. Performance is deficient if it falls below an objective standard of reasonableness. *See Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Prejudice is proven when there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 494. Failure to demonstrate a sufficient showing of either of these two prongs allows a court to dispose of the ineffective assistance of counsel claim without addressing the other prong. *See id*. at 697.

The Supreme Court has held that under AEDPA, a court must be "doubly deferential in reviewing ineffective assistance of counsel claims." *See Burt v. Titlow*, 134 S.Ct. 10, 13 (2013). Zealous

advocacy does not necessarily equate to ineffective assistance of counsel when the evidence against a defendant is overwhelming. *See Strickland*, 466 U.S. at 680 (stating a counsel's strategic decisions must be assed in light of the time, not in hindsight). Here, the record indicates petitioner's counsel zealously advocated on his behalf. *See* Rec. Doc. 16 at 64. Although defense's advocacy elicited some negative feedback by the trial judge, the Court does not find but for these interactions the result of the trial would have been different. Thus, petitioner fails to meet the bar set by *Strickland*.

Petitioner's claims that defense counsel failed to file a motion for a new trial and prepare for the multiple bill hearing are unconvincing. *See* Rec. Doc. 17 at 35-36. Regarding the motion for new trial, a defense counsel is not required to make futile motions or objections. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)(finding a defense counsel was not required to make futile motions or objections where the issue was already unsuccessfully objected and the petitioner failed to demonstrate any other legitimate grounds). Here, the Louisiana Supreme Court already found the allegedly suppressed evidence was not *Brady* material. *See* Rec. Doc. 17 at 65. Defense counsel had no chance of having a motion for a new trial granted based on allegedly suppressed exculpatory evidence the state's highest court had already found was not *Brady* material. Further, the interlocutory

ruling on the *Brady* issue was appealable and appellate counsel included the preserved issue on direct appeal, which was denied. *See* Rec. Doc. No. 16 at 61, 65. Because petitioner provides no additional reason as to why the motion may have been granted, petitioner's argument fails.

Regarding the multiple bill hearing, the record indicates defense counsel reviewed the State's multiple bill and required the State to prove the necessary elements for the bill. *See* Rec. Doc. 16 at 66. The record also indicates that defense counsel thoroughly cross-examined the State's witness, and afterwards informed the trial court he had no legal basis to object. *See id*. Thus, petitioner's assertion is mistaken. Further, Petitioner's use of *United States v. Cronic*, 466 U.S. 648 (1984) is incorrect. *Cronic* deals with situations where "counsel is appointed so late or is otherwise incompetent as to have been nonexistent." *See Crochet v. Goodwin*, Civ. Action No. 13-3106, 2014 WL 5093995, at *5 (E.D. La. Oct. 8, 2014). As shown above, the *Cronic* case is factually distinguishable from the instant record.

Lastly, petitioner's claim that counsel was deficient for failing to object to the trial judge's use of "defendant" instead of "accused" is also denied. *See* Rec. Doc. 17 at 36-4. The mere use of an erroneous instruction to the jury under state law is not a basis for federal habeas relief. *See Estelle*, 502 U.S. at 62. Federal habeas courts may grant relief only if the ailing

instruction infected the entire trial process. *See id*. at 72; *see also Cupp v. Naughten*, 414 U.S. 141, 147 (1973) (noting it is well established that a single jury instruction may not be judged in isolation, but rather in the context of the overall charge). Here, Petitioner admits that prior to the alleged erroneous instruction the trial judge instructed the jury that he was entitled to a presumption of innocence. *See* Rec. Doc. 17 at 36. Further, according to its plain interpretation, defendant is defined as "[a] person . . . *accused* in a criminal proceeding." *See* DEFENDANT, BLACK'S LAW DICTIONARY (11th Ed. 2019) (emphasis added). Accordingly, petitioner fails to prove but for his counsel's failure to object to the instructions the jury would have had reasonable doubt concerning his guilt.

## F. EXCESSIVE SENTENCE CLAIM

Petitioner fails to show how his life sentence as a fourth-felony offender is constitutionally excessive. *See* Rec. Doc. 17 31-33. Excessive sentence claims present a question of law. *See Chatman v. Miller*, Civ. Action No. 05-1481, 2005 WL 3588837, at *5 (E.D. La. Nov. 9, 2005). The Eighth Amendment does not require strict proportionality between crime and sentence. *See Ewing v. California*, 538 U.S. 11, 20 (2003). Unless grossly disproportionate to the gravity of the offense, a sentence within statutory limits will not be upset by a federal habeas court. *See Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991). Furthermore, the

Supreme Court has long recognized recidivism as a legitimate basis for increased punishment. *See Almendarez-Torres v. United States*, 523 U.S. 224, 230 (1998).

Petitioner's claim that the state court sentence is invalid due to its noncompliance with state law procedural grounds is not cognizable in the federal habeas context. *See Butler v. Cain*, 327 F. Appx. 455, 457 (5th Cir. 2009); *see also Haynes v. Butler*, 825 F.2s 921, 924 (5th Cir. 1987) (". . . a state's failure to follow its own sentencing procedures is not reviewable by federal habeas).

To the extent petitioner contends his sentence constitutes cruel and unusual punishment under the Eighth Amendment, the claim fails on the merits. The grossly disproportionate principle only applies to the "exceedingly rare" and "extreme" cases. *See Lockyer v. Andrade*, 538 U.S. 63, 73 (2003); *see also Rummel v. Estelle*, 445 U.S. 263, 272 (1980). In fact, life sentences have been given and upheld in far less egregious offenses than petitioner's instant offense. *See*, *e.g.*, *Harmelin v. Michigan*, 502 U.S. 957, 1001 (1991)(upholding a life sentence without parole for a first time offender convicted of possessing 672 grams of cocaine); *Rummel*, 455 U.S. at 271 (upholding a life sentence with possibility of parole for the defendant's third nonviolent felony conviction for the crime of obtaining $120.75 by false pretenses); *Olivier v. Prince*, 719 F. App'x 389 (5th Cir. 2018)(upholding sentence of 25 to life under three strikes law for felony grand theft of several

golf clubs). Considering petitioner's prior felony convictions and the seriousness of the instant matter, petitioner's life sentence under Louisiana's multiple offender laws is not shown to be in violation of the Eighth Amendment.

New Orleans, Louisiana this 30th day of July, 2019

_____
SENIOR UNITED STATES DISTRICT JUDGE